THE PEOPLE *ex rel.* George E. Bliss *et al.*

*v.*

THE CHICAGO WEST DIVISION RAILWAY COMPANY.

*Filed at Ottawa May 15, 1886.*

1.  STREET RAILWAY—*grant of right of way for extension of railway track—of a condition which may exempt a company from performance.* An ordinance granting a city railway company the right to extend its railroad track from its then terminus to the city limits, required the track to be extended to a certain park, being a point short of the city limits, by a given time, and from that point on to the city limits as soon as the same could be constructed, operated and kept in repair without actual loss, and the company to accept the ordinance within ten days after its approval by the mayor. The ordinance was accepted, and the track was built and operated to the park.  On *mandamus* to compel the building and operation of the track to the city limits, the answer showed that it could not be constructed, etc.,

without actual loss, which was admitted by demurrer to the answer: *Held,* that the answer showed a good reason for not compelling the company to build and operate such part of the road.

2. SAME—*power of city authorities to change the terms of a grant after its acceptance.* Where an ordinance of a city granting a railway company the right to construct and operate a track along a portion of a street, upon certain conditions, has been accepted, so that the ordinance as accepted constitutes a contract, the rights of the contracting parties will be governed by such ordinance, and the city authorities will be powerless to impose new and further conditions and burdens upon the railway company without its consent, such as the construction and operation of an extended line of its road, which it was not required to do under the original ordinance.

3. SAME—*of a petition by property owners to grant right of way—whether any conditions are prescribed.* Certain property owners in a city petitioned the city authorities to grant permission to a street railway company to extend its line to a point named, and requesting the city council to pass an ordinance, or to issue such order as it might legally issue, to compel such company to lay its tracks and run its cars upon said extended line without unnecessary delay: *Held,* that the petition did not request the grant of the permission upon any condition whatever, although the consent to the laying of the track might have been made to depend on conditions which the council could not have disregarded.

4. MANDAMUS—*to compel corporation to build a street railway. Quœre,.* whether a city railway company can be compelled, by *mandamus,* to construct and operate a line of railroad along a street in accordance with conditions in an ordinance which it has accepted, no such duty being imposed by its charter.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Messrs. C. C. & C. L. BONNEY, and Mr. L. M. PAINE, for the appellants:

Clause 90, section 62, of the city charter, is a limitation on appellee, as well as on the common council, wherefore the consent of the abutting property owners, shown herein, was a prerequisite to the passage of the ordinance, without which said council would have had no jurisdiction, and so much of said ordinance as does not conform to the petition of said property owners is *ultra vires* and void. That clause is a leg-

islative inhibition against granting "the use or right to lay down any railroad tracks in any street of the city to any steam or horse railway company, except on a petition of the owners of the land representing more than half of the frontage of the street, or so much thereof as is sought to be used for railroad purposes. *Hickey* v. *Railroad Co.* 6 Bradw. 184; *McCartney* v. *Railway Co.* 112 Ill. 639; *Roberts* v. *Easton,* 19 Ohio St. 86.

Having shown that the mere naked consent is a prerequisite, we say the property holders may qualify the consent in any way or with such conditions as they may see fit. *People* v. *Dutcher,* 56 Ill. 148; *People* v. *Glann,* 70 id. 234; *Railway Co.* v. *Barnett,* 85 id. 321; *People* v. *Clayton,* 88 id. 46; *People* v. *Waynesville,* id. 477; *People* v. *Holden,* 91 id. 450.

Appellee is bound to use the entire privilege as contained in the consent and in section 1 of the ordinance. *Hickey* v. *Railway Co.* 6 Bradw. 181; *State* v. *Railway Co.* 29 Conn. 546; *People* v. *Railway Co.* 37 How. Pr. 430; *People* v. *Railway Co.* 24 N. Y. 267.

That railway companies and other corporations may be compelled to perform the duties imposed on them by public law, see *Hawthorn* v. *People,* 109 Ill. 311; *Railway Co.* v. *People,* 105 id. 661; *Dunne* v. *People,* 94 id. 141.

Mr. C. BECKWITH, for the appellee:

The relators have no such interest in the construction, maintenance and operation of the railway from Lawndale to the city limits as entitles them to a writ of *mandamus.* The city of Chicago is the proper party to enforce contracts made with it.

*Mandamus* is not an appropriate remedy to enforce an obligation imposed by contract. Appellee's obligation to construct and operate its road from Lawndale to the city limits depends upon whether this can be done without actual loss.

The consent of the property holders for the use of the street is not subject to any condition.

The ordinance, when accepted, became a contract between the appellee and the city, which neither party may violate. By that contract the city agreed that the appellee should not be required to construct, maintain and operate a railway upon that end of the line until it could be done without actual loss.

Mr. Justice Craig delivered the opinion of the Court:

The Chicago West Division Railway Company, under the terms of its charter, was authorized to construct, maintain and operate a single or double track railway along such streets in the west division of the city of Chicago as the common council shall, from time to time, authorize, upon such terms and conditions, and with such rights and privileges, as the council has, or may, by contract, prescribe. On the 2d day of August, 1880, a petition was signed by a majority of owners of land, representing more than one-half of the frontage on Ogden avenue, between Western avenue and the city limits, and presented to the common council, in which the common council was requested to grant the Chicago West Division Railway Company permission to lay its tracks upon Ogden avenue, from Western avenue to Crawford avenue. No conditions were prescribed in this petition, but it contained the request that the common council would also pass such ordinance, or issue such order, as may be legally authorized, to compel the railway company to lay its tracks and run its cars upon the extended line, without unnecessary delay, after permission is given to occupy the streets. On the 7th day of August, 1881, the common council passed an ordinance, section 1 of which authorized the railroad company to extend its line of road from its present terminus, at or near Western avenue, to the western limits of Chicago. Section 2 is as follows: "Said permission and consent to extend shall be conditional upon the acceptance by said Chicago West Division Railway Company, of this ordinance, within ten days

after its passage, and approval by the mayor, and their agreement to comply with all its conditions; and upon the further conditions that said tracks shall be laid and in actual operation from Western avenue to the western line of Douglas Park on or before the 1st day of June, 1881, and from the western line of Douglas Park to Lawndale, as soon as the same can be constructed, operated and kept in repair without actual loss." On the 23d of February following, the railroad company filed in the office of the city clerk its written acceptance of the ordinance. The road has been constructed, and is in operation, from Western avenue to Douglas Park, and the question presented by this record is, whether the railway company can be compelled by *mandamus* to construct and operate a line of road from Douglas Park to Lawndale.

In the answer to the petition, the railway company, among other things, denied that the extension of its line from Douglas Park to Lawndale ever could have been or could then be constructed, operated and kept in repair without actual loss. To the answer the petitioner demurred. The court overruled the demurrer, and as the petitioner abided by the demurrer, the writ was dismissed.

Whether a railway company can be compelled to construct and operate a line of railroad, by *mandamus,* may well be doubted, but we do not find it necessary to decide that question, as the decision of the case may properly be placed upon other grounds. It is not claimed that the charter, under which the railway company derived its corporate powers, of itself imposed the obligation to construct this particular line of road, but the obligation, if any exists, arises from the ordinance adopted by the city of Chicago, and the acceptance of its provisions by the railway company. This being the case, an examination of the terms and conditions of the ordinance, and its acceptance, seems to be necessary to determine the rights, the duties and obligations of the parties.

As said before, the first section of the ordinance authorized the railway company to construct and operate a line of road on Ogden avenue, from Western avenue to the western limits of the city. The second section imposed the conditions: The first requires the acceptance of the ordinance by the railway company within a specified time. Second, that the tracks shall be laid and the road in operation from Western avenue to the western line of Douglas Park on or before the 1st day of June, 1881; and third, from the western line of Douglas Park to Lawndale, as soon as the road can be constructed, operated and kept in repair without actual loss. These, alone, were the conditions imposed by the city of Chicago upon the railway company when it accepted the ordinance and agreed to be bound by its terms and conditions, and it is plain that other and additional conditions could not be imposed without its consent. Under the ordinance which was accepted by the railway company, it was not bound to construct and operate a line of road from Douglas Park to Lawndale until it could be built, operated and kept in repair without actual loss. In the answer, which is admitted to be true by the demurrer, it is clearly alleged that the road can not be constructed and kept in repair without loss. With this conceded fact in the record, it seems too plain for argument that no obligation rests on the railway company to construct and operate this part of the road.

But it is set up in the petition, that on the 4th day of August, 1884, the city of Chicago passed an ordinance requiring the railway company, within sixty days after being notified of the action of the city, to extend its line of road to Lawndale. This evidence can have no bearing on the question involved. In the original ordinance, no right to alter or change the terms upon which the railway company accepted the terms of the ordinance, was reserved, and in the absence of such reservation we are aware of no principle upon which the city, without the consent of the railway company, can impose upon it other

and additional obligations.    When the common council gave the railway company permission to occupy the streets of the city, it then had the right to impose such conditions in regard to the time within which the line of road should be completed, as in its judgment the public interest of the city required, but after it had acted and its terms had been accepted, it would be manifestly unjust and unwise to allow the common council arbitrarily to impose other and different terms.    Doubtless the common council, notwithstanding the grant to the railway company of the right to use the streets, retained full power and authority over the streets to improve them, and use them for all purposes for which they were dedicated to public use. But that reserved power conferred no right on the common council to compel, by ordinance, the construction and operation of a street railway.

The petitioner, however, concedes, in the argument, that he is bound by the ordinance which was accepted by the railway company, in so far as it conforms to the consent of a majority of the land owners, but he insists that section 2 of the ordinance, which provides for the building of the road to Lawndale as soon as the same can be constructed and operated without loss, is void.    This position is founded on a misconception of what we conceive to be a fair and reasonable construction to be placed upon the written consent submitted by the land owners to the common council, upon which that body acted when it passed the ordinance.    The petition is addressed to the mayor and common council, and after reciting that petitioners are a majority by frontage of those owning property on the proposed line, proceeds: "Being desirous of having the West Division City Railway Company extend its line from its present terminus to or beyond Douglas Park, * * * petition * * * your body to grant permission to said company to lay their tracks upon Ogden avenue, from Western avenue to Crawford avenue.    And your petitioners would further * * * request your * * * body to pass such

ordinance or issue such order as you may be legally author-
ized to do, to compel said company to lay its tracks and run
its cars upon said extended line without unnecessary delay,
after you have authorized it so to do." This is the document
which led to the passage of the ordinance, section 2 of which
it is said is void, as not being authorized by it. It is true,
that the property owners might have inserted such conditions
in their assent as they thought proper, and the common
council might have been powerless to grant the railway com-
pany permission to occupy the streets except upon the con-
ditions specified by the property owners in their consent, but
the paper does not seem to contain conditions. The grant of
the right was not requested upon any condition. The latter
part of the paper expresses a request that the railway com-
pany might be required to lay its tracks and run its cars
without unnecessary delay, but consent is not given on this
condition or even any other condition. Under the consent, as
expressed in the writing, the common council possessed the
power to act as in their judgment the best interests of the
public required. This they did by the passage of the ordi-
nance, and it is not for the courts to say that the ordinance,
as framed, passed, and accepted by the railway company, was
wise or unwise. It is enough that the common council were
authorized to pass the ordinance. Their discretionary power
as to its terms and conditions is not a subject of review.

Other matters, not however of controlling importance, have
been discussed, but it will not be necessary to follow the
argument in detail. We perceive no ground upon which the
petition can be sustained.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*