LAWRENCE E. MᴄGANN, Commissioner, etc.

*v.*

THE PEOPLE *ex rel.* M. D. Coffeen.

*Opinion filed February 21, 1902.*

1. MUNICIPAL CORPORATIONS—*city cannot grant right to lay railroad tracks in street without petition of property owners.* Under paragraph 90 of section 1 of article 5 of the City and Village act, as amended in 1887, (Laws of 1887, p. 114,) a city has no power to pass an ordinance granting the right to lay down any railroad tracks in any street of the city to any steam, dummy, electric, cable, horse or other railroad company except upon petition of the owners of land representing more than one-half the frontage of the street or so much thereof as is sought for such purpose.

2. SAME—*paragraph 90 of section 1, article 5, of City and Village act, applies to individuals.* Paragraph 90 of section 1 of article 5 of the City and Village act, prohibiting a city from granting the right to lay railroad tracks in any street of the city to any railroad company except upon petition of property owners, includes within its meaning individuals, as well as corporations or companies, desiring to lay switches from their establishments to railroad tracks.

3. SAME—*ground upon which ordinances permitting individuals to lay railroad track in street have been sustained.* The ground upon which ordinances granting to individuals the right to lay switch tracks in a public street have been sustained is, that the track so permitted to be laid down and connected with the main track of a railroad company is only an extension of the track of such railroad company, and is, in effect, a grant to the railroad company, through the individual presenting the application.

4. STATUTES—*effect where the statute, which has been construed, is substantially re-enacted.* If the legislature re-enacts a statute in substantially the same words as the original, which has been judicially construed, it will be presumed that such statute was re-enacted in view of such construction.

5. MANDAMUS—*mandamus should not be awarded in doubtful cases.* The writ of *mandamus* should not be awarded unless the petitioner shows a clear right to have the thing sought by it done, nor unless it is the clear duty of the respondent to act.

6. SAME—*when a petition for mandamus will not support a judgment awarding the writ.* Failure of a petition for *mandamus* to compel the respondent, as commissioner of public works, to issue the petitioner a permit to lay a switch track in a public street, to aver that the necessary petition signed by owners of property abutting upon the street was obtained and filed with the common council before the

ordinance granting him the right to lay the track was passed, renders the petition so defective that it cannot support a judgment awarding the writ, even though the demurrer to the respondent's answer could not be carried back to the petition by reason of a demurrer having been filed to the petition and overruled.

*McGann* v. *People ex rel.* 97 Ill. App. 587, reversed.

Appeal from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. E. F. Dunne, Judge, presiding.

This is a petition for *mandamus,* filed by appellee on September 14, 1899, against the appellant, as commissioner of public works of the city of Chicago, to compel him to issue and deliver to the relator a permit in writing, authorizing the relator to lay down and construct a switch track in accordance with the terms and provisions of an ordinance, passed by the city of Chicago on February 3, 1896. Appellant filed a general demurrer to the petition, which was overruled. Thereupon, on October 21, 1899, the defendant below, appellant here, filed an answer to the petition. To this answer a demurrer was filed by the relator or petitioner. The demurrer was sustained, and leave was given to appellant to amend his answer. On November 14, 1899, appellant, commissioner of public works, filed his amended answer. Petitioner filed a general and special demurrer to certain paragraphs of the amended answer. On February 7, 1900, the court sustained the general and special demurrer to certain portions of appellant's amended answer. On February 26, 1900, appellant made a motion in writing for leave to file an amendment to his amended answer, and presented a draft of the amendment, which he so desired to make. The court, however, refused to allow appellant to file the amendment so presented, and overruled his written motion for leave to do so. Thereupon, the court entered an order, directing the issuance of a writ of *man-*

*damus* upon the face of the pleadings and in accordance with the prayer of the petition. From this order appellant prayed an appeal to the Appellate Court. The Appellate Court affirmed the judgment of the circuit court, ordering the writ of *mandamus* to issue. The present appeal is prosecuted from such judgment of affirmance.

The petition for *mandamus* alleges, that the relator is the owner in fee simple and in possession of two lots in Chicago, having a north frontage of 170.8 feet on Wayman street; that said lots are improved with a six-story and basement brick warehouse, occupied and used by relator's lessees for the receipt, storage and sale of merchandise brought into Chicago over various railroads, and, when sold, shipped from time to time from said building over various railroads; that on February 3, 1896, the city council of Chicago passed the following ordinance, to-wit:

"An ordinance granting to M. D. Coffeen permission and authority to construct and operate a private switch. *"Be it ordained by the city council of the city of Chicago:*

"Section 1. That permission and authority is hereby granted to M. D. Coffeen, or his assigns, to construct, maintain and operate a private single railroad switch for a period of ten years, from and connecting with the tracks of the Pittsburg, Cincinnati, Chicago and St. Louis Railroad Company at a point east of Jefferson street near its intersection with the Milwaukee avenue viaduct, thence on a gradual curve in a south-westerly direction across Jefferson and Wayman streets, and west on and along the south side of Wayman street to Desplaines street: *Provided, however,* that said M. D. Coffeen shall, before laying any part of said track, enter into bond with the said city of Chicago in the penal sum of five thousand ($5000.00) dollars, to be approved by the mayor, to hold and save the city of Chicago harmless from all damages caused by the passage of this ordinance: *Provided further,* that the privileges hereby granted shall be

subject, in all respects, to all ordinances now in force or which may be hereafter passed concerning railroads, and said M. D. Coffeen and his assigns shall keep so much of Wayman street as shall be occupied by said switch in such condition and repair as may be directed by the department of public works: *And provided further,* that said switch shall be constructed and maintained under the direction and supervision of the department of public works.

"Sec. 2. This ordinance shall be subject to amendment or repeal at any time for failure to comply with any order of the department of public works concerning proper construction and maintenance of said switch, and upon the expiration of this ordinance said M. D. Coffeen or his assigns shall remove said switch after notice from the department of public works, and in case of failure or refusal to comply with said notice, then the city of Chicago may remove the same at the expense of M. D. Coffeen or his assigns.

"Sec. 3. This ordinance shall be in force from and after its passage and acceptance by M. D. Coffeen."

The petition further alleges, that this ordinance was approved by the mayor on February 7, 1896, and accepted by the relator, and a bond executed, as required by the ordinance, and approved by the mayor on February 13, 1896; that, under the general ordinances of Chicago, it was relator's duty to obtain a permit from the commissioner of public works before entering upon the work of laying said switch track; that petitioner made his application in writing on February 12, 1896, and on February 15, 1896, the commissioner of public works issued to petitioner a permit in writing, authorizing him to proceed with the construction of said switch track in accordance with the provisions of said ordinance, it being provided that the work should be completed within thirty days, otherwise the permit to be null and void; that the petitioner by the Pittsburg, Cincinnati, Chicago and St. Louis

Railroad Company, a corporation, which had agreed to do the work for petitioner, commenced to lay said track, but, before the same had been completed, said railroad company, induced by the Chicago, Milwaukee and St. Paul Railway Company, tore up a portion of the track so constructed, and refused to lay the same, or to proceed further with its construction; that, on February 25, 1896, after the railroad company had torn up the track, and before petitioner had time to re-commence the work, the Chicago, Milwaukee and St. Paul Railway Company filed a bill in the United States Circuit Court, asking that petitioner be perpetually enjoined from constructing said switch track; that afterwards, on April 4, 1896, a decree was entered by said court so enjoining petitioner, which decree of injunction remained in force until November 10, 1898, when the same, in accordance with the mandate of the United States Circuit Court of Appeals, was dissolved and vacated, and on January 9, 1899, said bill was dismissed; that on February 4, 1899, petitioner made application in writing to said commissioner for a permit to construct a switch track in accordance with said ordinance, said ordinance being still in force and effect, the permit formerly issued having become void for the lapse of time; that the said application was approved by the deputy commissioner of public works and the assistant corporation counsel of the city, but the commissioner of public works refused to issue such permit; that petitioner is therefore unable, without violating the general ordinances of the city respecting permits, to proceed with the laying down and constructing of said switch track.

The amended answer of the appellant admits the passage of the ordinance in question on February 3, 1896, and the making of the application for a permit, and the granting of the permit, and that, by the terms thereof, the laying of the switch track was to be completed within thirty days of the date of the permit, otherwise the permit was to become null and void. But the answer

avers, that the work of laying said switch track, for which said permit was issued, was not completed within a period of thirty days, nor was it at any time afterwards completed, and that said permit, so given by the commissioner, became null and void. The amended answer also admits, that petitioner applied for another permit to lay said switch track on February 4, 1899, and avers that, before such application was passed upon, the ordinance of February 3, 1896, was repealed by the passage by the city council of the city of Chicago on May 29, 1899, of the following repealing ordinance, to-wit:

"An ordinance repealing an ordinance granting M. D. Coffeen permission and authority to construct and operate a private switch.

"Whereas, on the third day of February, 1896, this council passed an ordinance entitled 'An ordinance granting to M. D. Coffeen permission and authority to construct and operate a private switch,' said switch track to be laid from and connecting with the tracks of the Pittsburg, Cincinnati, Chicago and St. Louis Railroad Company at a point east of Jefferson street near its intersection with Milwaukee avenue viaduct, thence on a gradual curve in a south-westerly direction across Jefferson and Wayman streets, and west on and along the south side of Wayman street to Desplaines street; and whereas, it was represented to the city council by plats that said Wayman street was about sixty (60) feet wide; and whereas, as said Wayman street was not at that time, nor is it at the present time, more than forty (40) feet in width; and whereas, said street was at the time of the passage of said ordinance, and for many years prior thereto, and is at the present time, continually crowded with teams going to and from the railroad freight houses and yards in that vicinity, and said switch track, if laid and operated, would materially reduce the width of said street and almost destroy its use to the general public; now, therefore,

*"Be it ordained by the city council of the city of Chicago:*

"Section 1. That the ordinance passed by this council on February 3, 1896, entitled 'An ordinance granting to M. D. Coffeen permission and authority to construct and operate a private switch,' as shown upon pp. 1844 and 1845 of the official proceedings of this council for the years 1895 and 1896, be and it is hereby repealed.

"Sec. 2. This ordinance shall take effect from and after its passage and approval."

The amended answer then proceeds to aver that, by reason of the passage of the repealing ordinance, appellant, as commissioner of public works, had no authority to issue a permit to petitioner, authorizing him to lay down a private switch track, and denies that, at any time since May 29, 1899, it was or is appellant's duty to issue a permit, as requested by the petitioner or relator. The amended answer further sets up, that the passage of the ordinance of February 3, 1896, was secured by relator by misrepresentation and fraud, in that petitioner represented that its construction would not injuriously affect for public use the streets, along and upon which it was proposed to lay said switch track, and further represented to the council, that Wayman street was sixty feet in width, and that no great amount of traffic was conducted upon any of the streets upon which it was proposed to lay such switch track; that Wayman street was not sixty feet in width, but only forty feet in width, and that Jefferson and Wayman streets were continually crowded with teams going to and from the railroad freight houses and yards in that vicinity; that the said switch track, if constructed along Jefferson and Wayman streets, would have practically destroyed the use of the streets for public use between the points where it was to be constructed and would have blocked all traffic on said streets; that the city council was misled into passing said ordinance by such representations; that it was learned afterwards by the city council, that the ex-

ercise by relator of the privileges granted by the ordinance of February 3, 1896, would almost entirely exclude the public from the portions of Jefferson and Wayman streets above mentioned, and would render the same dangerous and unfit for public traffic; that, by reason of such facts being made known to the council, it repealed said ordinance; that a general public protest was made to the council against the granting of the permit in question to relator by about two thousand persons, firms and corporations engaged in the teaming business; that said switch track, if laid as requested, would deprive the interests, engaged in the teaming business, of the use of said streets for teaming purposes; that, in the belief of the council, the granting of said permit under said ordinance would create a nuisance and an illegal incumbrance on said streets, "and that such ordinance granting such privilege to said M. D. Coffeen to lay a switch track along said Jefferson street and Wayman street, in manner and form as aforesaid, was illegal for the reason that the city council did not have the authority to grant any person, firm or corporation, for private use, any part of any public street or streets so as to exclude the public from the use thereof;" that for these reasons the council passed the repealing ordinance above named; that petitioner has at no time since February 3, 1896, completed, or had in operation, said switch track, and that his failure so to do prior to the passage of said repealing ordinance was not occasioned through any fault of appellant.

The amendment, which the appellant asked leave by motion in writing to make to his amended answer, and a draft of which amendment was submitted to the court with his motion, was an amendment, setting up that the ordinance of February 3, 1896, vested no authority in the petitioner to construct and operate said switch track, and vested no right in him to have a permit issued to him by this defendant permitting the construction of such switch track, for the reason that the ordinance of Febru-

ary 3, 1896, was illegal and void, and that the city council had no power to pass the same, because said ordinance was not passed in accordance with the provisions of the 90th clause of section 1 of article 5 of chapter 24 of the Revised Statutes of Illinois, and because no petition of the owners of the land, representing any part of the frontage of either of said streets named in said ordinance of February 3, 1896, and along and upon which the switch track was to be laid and operated, was presented to the city council; and that, without such petition, signed by the owners of the land, representing more than one-half of the frontage of each mile and of each fraction of a mile along the streets or parts of streets, upon which the switch track was to be laid and operated in accordance with said ordinance, no authority or power whatsoever was in the city council to pass said ordinance. The amendment avers that, prior to the passage by the council of said ordinance of February 3, 1896, or at any time since, no petition of the owners of any land, fronting on any part of either Jefferson or Wayman streets, along which said switch track was to be laid and operated, was presented to the city council.

CHARLES M. WALKER, Corporation Counsel, and WILLIAM H. ARTHUR, for appellant.

MORRIS ST. P. THOMAS, (ELMER H. ADAMS, of counsel,) for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The petition for *mandamus* in this case does not show, that any petition of the owners of land, representing any of the frontage along any part of either of the streets, upon which it was proposed to lay the switch track, was signed or presented to or filed with the city council of the city of Chicago before the city council passed the ordi-

nance of February 3, 1896, under which the relator claims the right to lay down and operate such switch track.

*First*—A petition, signed by the owners of the land representing the frontage hereinafter stated, is a prerequisite to the passage of a valid ordinance by a city council in this State, granting the right to lay railroad tracks in a public street in a city, and in the manner and for the purpose described in the ordinance of February 3, 1896.

Paragraph 90 of section 1 of article 5 of the original City and Village act of 1872 was as follows: "The city council or board of trustees shall have no power to grant the use of, or the right to lay down, any railroad tracks in any street of the city, to any steam or horse railroad company, except upon a petition of the owners of the land, representing more than one-half of the frontage of the street, or so much thereof as is sought to be used for railroad purposes." (Rev. Stat. 1874, p. 223).

In *McCartney* v. *Chicago and Evanston Railroad Co.* 112 Ill. 611, in discussing paragraph 90 as above quoted, this court said (p. 636): "It is insisted that these defendant railroad companies have no right to use Hawthorne avenue and Canal street longitudinally, as there has not been the consent thereto of a majority of the property owners upon such streets. The provision of the statute upon the subject is as follows:" (said paragraph 90 is here quoted). * * * "Where this required consent has not been obtained, the city is absolutely without power to grant the license, and the exercise of it would be wholly without warrant, and unlawful."

In *Chicago Dock Co.* v. *Garrity*, 115 Ill. 155, it was said that the power of a city council to pass an ordinance, authorizing the location of railway tracks in the streets of the city, was conferred by the ninth and twenty-fifth clauses of section 1 of article 5 of that law, the ninth clause conferring the power "to regulate the use of the same," (streets), and the twenty-fifth clause conferring

the power "to provide for and change the location, grade and crossings of any railroad;" but it was there held, that "this power is subject to the limitation imposed by the ninetieth clause of section 1 of article 5," which is above set forth, and which makes a petition of the owners of the land, representing more than one-half of the frontage of the street, necessary to the grant of the right to lay a railway track in any street of the city.

In *Hunt* v. *Chicago Horse and Dummy Railway Co.* 121 Ill. 638, we said (p. 645): "Paragraph 90 provides that the city council shall have no *power* to grant the use of the streets except upon the petition of those owning more than one-half of the frontage of the streets to be used. This paragraph is a limitation upon the power granted by paragraphs 9, 24 and 25, as above quoted. (*Chicago Dock Co.* v. *Garrity*, 115 Ill. 155). The charter of the city confers upon the council the power to grant the use of the streets to horse or steam railroad companies, and paragraph 90 restricts and limits the exercise of that power to cases where there is a petition of property owners. * * * Paragraph 90 has reference to the relations between the common council as trustee and the property owners as beneficiaries in the trust. It has its origin in the right of the property owners, as a part of the general public, to control and limit the action of the council, which represents them as their agent. It is a doctrine, which cannot be too often called to mind, that the city holds the fee of the streets in trust for the benefit of the public. It follows naturally, as a corollary from this doctrine, that the power to grant the use of the streets is conferred upon the council also for the benefit of the public, including the owners of property abutting upon the streets to be used. That power lies dormant until the requisite number of owners authorize its exercise by petition. When they do so, the limitation upon the power of the council no longer exists. That body is then prepared to deal with the railroad companies, and not before."

In 1887 the legislature passed an act, amending para-graph 90 of section 1 of article 5 so that, since the amend-ment, it reads as follows: "The city council or board of trustees shall have no power to grant the use of or the right to lay down any railroad tracks in any street of the city to any steam, dummy, electric, cable, horse or other railroad company, whether the same shall be incor-porated under any general or special law of the State now or hereafter in force, except upon the petition of the owners of the land representing more than one-half of the frontage of the street, or so much thereof as is sought to be used for railroad purposes; and when the street or part thereof sought to be used shall be more than one mile in extent, no petition of land owners shall be valid unless the same shall be signed by the owners of the land, representing more than one-half of the frontage of each mile and of the fraction of a mile, if any, in excess of the whole miles, measuring from the initial point named in such petition, of such street or of the part thereof sought to be used for such railroad purposes." (1 Starr & Curt. Ann. Stat.—2d ed.—p. 712).

The amendment of 1887 merely enlarged the number of the companies, specified in paragraph 90 as it was be-fore the amendment, by adding to the "steam or horse railroad companies," "dummy, electric, cable or other railroad companies." The amendment did not have the effect to increase the power of the city council in the matter of granting authority to lay down railroad tracks in the streets. In other words, a city council had no more power to grant authority to railroad companies to lay down tracks in the public streets without a permis-sion of the property owners as above specified after the amendment of paragraph 90 was made in 1887, than it had before the amendment.

In *Doane* v. *Chicago City Railway Co.* 160 Ill. 22, speak-ing of paragraph 90, we said (p. 31): "Such consent of the owner is manifested by his signature to a petition

addressed to the common council of the city. Upon this petition the common council bases its legislative action. The provision of the statute embodied in paragraph 90 is a limitation upon the power of the council to grant the use of the streets to a street railway company. Unless there is a petition of those owning more than one-half of the frontage to be used, the council is without power to grant the license. (*McCartney* v. *Chicago and Evanston Railroad Co.* 112 Ill. 611; *Hunt* v. *Horse and Dummy Railway Co.* 121 id. 638)."

In *City of Chester* v. *Wabash, Chester and Western Railroad Co.* 182 Ill. 382. paragraph 90 was referred to in connection with an ordinance of the city of Chester, and it was there said by this court (p. 387): "No right existed in the city council to grant the use of the street for the purpose of laying down railroad tracks by this railroad company, except upon the presentation of a petition as provided for by the foregoing paragraph. * * * Inasmuch as the city council can only act on the petition of the owners of land fronting on the street, it cannot create conditions to the prejudice of such land owners to a broader extent than authorized by the petition itself, and as the basis of the action by the city council is the petition of the property owners fronting on the street, such property owners may, with reference to the time the street is to be used, impose such terms by their petition as in their judgment will best subserve their and the public interests, and may limit the time that the right granted shall continue, and such limitation will be binding on the city council." (See also *People ex rel.* v. *West Division Railway Co.* 118 Ill. 113; *Chicago, Danville and Vincennes Railroad Co.* v. *City of Chicago,* 121 id. 176; *Byrne* v. *Chicago General Railway Co.* 169 id. 75).

In view of the authorities above quoted, it necessarily follows that the common council of the city of Chicago had no power to pass the ordinance of February 3, 1896, under which the relator claims the right to a permit

from the appellant to lay railroad tracks in the streets named in the ordinance, unless there was first presented to the common council a petition, signed by such proportion of the property owners representing the frontage of the street, as is required by paragraph 90 as originally passed, and as subsequently amended.

*Second*—It is contended, however, by the appellee that the provisions of paragraph 90 apply only to companies or corporations, and not to individuals. The contention of the appellee seems to be, that the petition of the property owners is only necessary where a railroad company applies for a permit to lay down tracks in the street, and is not necessary where an individual applies for such a permit. It is claimed, that the common council may grant the right to lay down tracks in the public streets to an individual without any such petition as is specified in paragraph 90. It is true, that paragraph 90 does not mention individuals, but it was not necessary for the legislature to specify individuals, because it was already settled law that the common council had no authority to grant the use of a public street to a private individual for a private purpose. This doctrine is well settled by numerous decisions of this court. (*Smith* v. *McDowell*, 148 Ill. 51; *Field* v. *Barling*, 149 id. 556; *Hibbard & Co.* v. *City of Chicago*, 173 id. 91; *Snyder* v. *City of Mt. Pulaski*, 176 id. 397; *Pennsylvania Co.* v. *City of Chicago*, 181 id. 289; *Chicago Dock Co.* v. *Garrity, supra*).

It is true that ordinances, permitting an individual to lay down a railroad track in the street, which connects with the main track of a railroad company, have been sanctioned by this court. But such ordinances have been held to be valid upon the ground that the track, thus permitted to be laid down and to be connected with the main track of a railroad company, is only an extension of the track of the railroad company itself, and is, in effect, a grant to the railroad company to lay its track in the public street through the individual presenting

the application. The common council can only grant the use of the public streets for a public purpose, and it has been held by this court that, where a railroad company is permitted to lay its tracks in a street or upon public grounds, such use of the street or of the public grounds is for the benefit of the public. The use of the public street by the railroad company in such cases is justified upon the ground that its use for railroad purposes is a public use. (*Chicago, Rock Island and Pacific Railroad Co.* v. *City of Joliet*, 79 Ill. 25). This doctrine was most clearly announced in the case of *Chicago Dock Co.* v. *Garrity, supra.* In that case it was claimed, that the grants under the ordinance therein mentioned were to a private corporation and to private parties, and it was there held that, while railway companies in this State may be in a certain sense private corporations, the use of the railways is public, and, for that reason, the condemnation of private property for a railroad right of way is authorized. In *Chicago Dock Co.* v. *Garrity, supra*, it was said (p. 167): "It is not claimed that the use of the streets can be permanently granted for private purposes, and we recognize as unquestionable law　*　*　* that no corporation or individual can acquire an exclusive right to their use, or the use of any part of them, for private purposes. But we have held that there may be a grant to private individuals of the right to lay tracks in the streets, connecting with public railway tracks previously laid, and extending to the manufacturing establishments of those laying the tracks; but, in such cases, the tracks so laid become, in legal contemplation, to all intents and effects, tracks of the railway with which they are connected, and open to the public use, and subject to the public control in all respects as other railway tracks open to public use. We have not regarded the circumstances that they were laid with private funds, and that they terminated opposite or within convenient contiguity of a private manufacturing establishment, as materially affecting them,

and giving a private character to their use. All termini of tracks and switches are more or less beneficial to private parties, but the public character of the use of the tracks is never affected by this. If they are open to the public use indiscriminately, and under the public control to the extent that railroad tracks generally are, they are tracks for public use. It may be, in such cases, that it is expected, or even that it is intended, that such tracks will be used almost entirely by the manufacturing establishment, yet if there is no exclusion of an equal right of use by others, and this singleness of use is simply the result of location and convenience of access, it cannot affect the question. (*Truesdale* v. *Grape Sugar Co.* 101 Ill. 561; *Mills* v. *Parlin*, 106 id. 60)."

In addition to what has been said, it was expressly held in *Chicago Dock Co.* v. *Garrity, supra,* that section 90 imposed the obligation upon individuals, seeking to connect their establishments with railroad tracks, to present a petition of the requisite proportion of property owners to the common council, before they could exercise the privilege of laying down and operating such connecting tracks in a public street. In that case, after quoting paragraph 90, we said (p. 164): "It is very clear that 'natural persons' are here within the intention, although not within the letter, of the act, for the injury, against which protection is intended to be afforded, is the laying of railway tracks in the streets. By whom the tracks shall be laid and the cars thereon operated, is, manifestly, of no consequence whatever. The same result, in all respects, will follow the laying of railway tracks in the streets and operating cars thereon by individuals, as will follow the laying of them by corporations. The use of the word, 'company,' we have no doubt, was simply because such tracks are almost always laid and operated by companies. The clause should be read as including both corporations and individuals."

Therefore, the contention of appellee, that because the relator here is an individual, and not a corporation, he can secure the right to lay down switch tracks in a public street without filing the petition of property owners required by the statute, is without force. The ordinance in this case shows, that the authority, granted to M. D. Coffeen to construct and operate a private, single railroad switch, was an authority to connect such switch with the tracks of the Pittsburg, Cincinnati, Chicago and St. Louis Railroad Company at a certain point. Although the switch track, as alleged in the petition, was for the purpose of connecting the tracks of the Pittsburg, Cincinnati, Chicago and St. Louis Railroad Company with the warehouse of the relator, yet, practically and in effect, the permission granted by the ordinance was to the railroad company. In the petition it is averred that, before the thirty days expired, during which the permit issued by the appellant to the relator to lay the switch track was to last, the railroad company itself tore up the track partially laid down, and thereby refused to the relator the right to connect with its tracks. It is a serious question, whether the relator had any right to proceed with the laying of the tracks in view of the fact that the railroad company, with whose tracks the connection was to be made, repudiated the right of appellee to connect with the same.

By the showing of the petition itself a permit was granted to the relator on February 15, 1896, to lay down the switch track in the streets in question, but it was provided that the work of laying the same should be completed within thirty days, or the permit would be null and void. The petition itself shows that the work was not completed within the thirty days specified in the permit. Although a proceeding was instituted in the Federal court, in which an injunction was issued enjoining the laying of the track, yet that injunction, by the showing of the petition itself, was dissolved on Novem-

ber 10, 1898, and yet nothing was done in the matter of laying the track, and not even a second application for a permit was made, until nearly three months after the injunction was dissolved by the Federal court.

It seems to be contended by appellee, that the amendment of section 90 in 1887 in the manner above set forth changed the rule laid down in *Chicago Dock Co.* v. *Garrity, supra,* which holds that the terms of paragraph 90 apply to individuals, as well as to corporations. On the contrary, it must be presumed that the amendment of 1887 was passed in view of and with reference to the decision of this court in *Chicago Dock Co.* v. *Garrity, supra.* The decision in the latter case was rendered on November 14, 1885, and the amendment of 1887 went into effect on March 30, 1887. It is to be presumed, that the legislature had in view the construction, given by this court to paragraph 90 as including individuals as well as corporations. Where the legislature re-enacts a provision of a law in almost the same words as the original which has been judicially construed, it will be presumed that such provision was re-enacted in view of such construction. (*Kelley* v. *Northern Trust Co.* 190 Ill. 401, and cases there cited).

The case of *Chicago Dock Co.* v. *Garrity, supra,* has been endorsed and approved of by this court in the following cases: *County of Cook* v. *Great Western Railroad Co.* 119 Ill. 218; *Hunt* v. *Chicago Horse and Dummy Railway Co.* 121 id. 638; *Ligare* v. *City of Chicago,* 139 id. 46; *Smith* v. *McDowell,* 148 id. 51; *Corcoran* v. *Chicago, Madison and Northern Railroad Co.* 149 id. 291. To permit individuals to lay tracks of all kinds upon the public streets of a city without the consent of the property owners, as required by paragraph 90, would be to nullify and render of no effect the wise safeguard established by the legislature in that paragraph for the protection of property owners. In such case, it would be easy for corporations or companies, who do come within the requirements of the paragraph, to evade it in the names of individuals, who might

suffer themselves to be used as mere men of straw. Under such a construction of paragraph 90 the laying of railway tracks in the streets, which is the injury against which protection is intended to be afforded by that paragraph, would be accomplished without any consideration whatever for the rights of abutting property owners, or of the general public.

*Third*—Appellee makes the further contention that, even if all that has been said thus far be true, the failure of the relator to obtain and file a petition, signed by property owners owning the requisite frontage, is a matter which relator was not obliged to set up or aver in his petition, but that it is matter of defense which the appellant, as defendant below, was obliged to set up in his answer. It is to be noted, that the appellant asked leave to file an amendment to his answer, which did set up the failure to obtain, or present the petition in question, and that such petition was a condition precedent to the right of the common council to pass the ordinance of February 3, 1896. It is true that the trial court is invested with a large degree of discretion in the matter of allowing amendments, but that discretion should not be abused, and it should always be exercised "for the furtherance of justice," and in order to enable the plaintiff to sustain his action "or the defendant to make a legal defense." (1 Starr & Curt. Ann. Stat.—2d ed.—p. 375; 3 id. p. 3000). In this case, when the appellant made his motion for leave to file the amendment, he had prepared the amendment and submitted it with his motion. The answer, to which the amendment was to be made, was not under oath, and was not a sworn pleading, as was the case in *Jones* v. *Kennicott,* 83 Ill. 484, and *Wylder* v. *Crane,* 53 id. 490. Amendments to sworn pleadings are allowed with great caution. (*Jones* v. *Kennicott, supra*). The alleged failure to obtain the required petition of the property owners, as set up in the amendment, if it could be established, was sufficient to defeat the right of the petitioner

to have the writ of *mandamus;* and the ends of justice would seem to have demanded that the appellant should have been allowed to file his amendment. (*People ex rel.* v. *McCormick*, 106 Ill. 184). But without deciding that the court below abused its judicial discretion in refusing to allow the amendment in question to be filed, we are yet of the opinion that it was the duty of the relator to have averred in his petition, that such a petition, as is required by paragraph 90, had been obtained and presented or filed before the passage of the ordinance, upon which the relator relies.

It is well settled, that the writ of *mandamus* should never be awarded, unless the party applying for it shows a clear right to have the thing sought by it done; nor unless it is the clear duty of the party, sought to be coerced, to do the thing he is called upon to do. The petitioner in *mandamus* is bound, like the plaintiff in an ordinary action, to state a case *prima facie* good; and every material fact, necessary to show the legal duty of the defendant to perform the act sought to be commanded, must be averred in the petition. (*People ex rel.* v. *Madison County*, 125 Ill. 334; *Chicago and Alton Railroad Co.* v. *Suffern*, 129 id. 274; *Springfield and Illinois Southeastern Railway Co.* v. *County Clerk*, 74 id. 27; *Swift* v. *Klein*, 163 id. 269). As the common council, under the authorities cited, had no power or jurisdiction to pass an ordinance, granting to the relator the privilege of laying a switch track in a public street without the petition of the property owners as above specified, the petition should have averred such facts as would show the existence of the power to pass the ordinance. It was as necessary to aver that the conditions precedent to the right of the council to pass the ordinance existed, as it was to aver that the ordinance itself was passed.

In *Thorn* v. *West Chicago Park Comrs.* 130 Ill. 594, where, under a certain statute, park commissioners had power to select certain streets to be converted into boulevards,

194—35

connecting a park with the city, upon certain express conditions, one of which was that the consent, in writing, of the owners of a majority of the frontage of the lots and lands, abutting on such street or streets, should first be obtained, we said (p. 604): "Such consent of the owners of more than one-half of the frontage upon the portions of the streets proposed to be converted into a boulevard connecting the park with the city, lay at the foundation of the right of the park commissioners to assume control of the streets. The existence of the fact was necessary to the jurisdiction of the park commissioners, and the burthen was upon them to establish, *prima facie* at least, the jurisdictional facts, authorizing them to take these streets for the purpose of constructing a boulevard appurtenant to the park, and connecting the same with the city;" and we there held that "the burthen was upon the park commissioners to show, affirmatively, the jurisdictional fact of consent by the owners of the required amount of frontage." If such consent should be shown affirmatively, then there should be an averment thereof in the pleading of the moving party.

In *Cummings* v. *West Chicago Park Comrs.* 181 Ill. 136, this court held that, where an ordinance contained a recital to the effect that the petition of the owners of a majority of the land fronting on the improvement was presented to the municipal authorities, such recital was sufficient *prima facie* evidence of the existence of such jurisdictional fact. In the case at bar, the ordinance of February 3, 1896, contains no such recital. Hence, upon the showing of the petition itself, there was not even any *prima facie* evidence that the required petition had been obtained and filed or presented before the passage of the ordinance. In *Cummings* v. *West Chicago Park Comrs. supra*, all the cases upon this subject were reviewed and commented upon, and, while it was there held that such recital in the ordinance was *prima facie* evidence of the existence of the fact recited, it was at the same time held

that, where there was no such recital of the facts necessary to confer jurisdiction, and no proof thereof, there would be an entire absence of jurisdiction. (*Frizell* v. *Rogers*, 82 Ill. 109).

Appellee insists, however, that the appellant filed a demurrer to the petition, and that this demurrer, having been overruled, the appellant did not stand by his demurrer, but answered the petition and thereby waived his right to insist upon the defective character of the petition in this regard. The relator or petitioner demurred to the answer. It is true that, here, the demurrer to the answer could not be carried back to the petition, because the court will not, in carrying the demurrer back, sustain it to a pleading of the adverse party, to which a demurrer thereto has been already overruled. (*Culver* v. *Third Nat. Bank of Chicago*, 64 Ill. 528; *People* v. *City of Spring Valley*, 129 id. 169). But it is also a well established rule that, if the declaration or petition is so defective as not to sustain the judgment, such defect may be taken advantage of on a motion in arrest of judgment, or on error. (Ibid). We are of the opinion that, here, for want of the averment that the required petition of the property owners had been obtained and filed with the common council before the ordinance was passed, the petition was so defective that it could not support a judgment awarding the writ of *mandamus*, even though the demurrer to the answer could not be carried back by reason of a demurrer having been filed to the petition and overruled.

*Fourth*—The appellee further claims that the appellant, as commissioner of public works of the city of Chicago, was merely a ministerial officer and could not set up the invalidity of the ordinance of February 3, 1896, as a justification for refusing relator's application for a permit to lay down the track. It is said that the duty imposed upon the appellant was a purely clerical or ministerial one, and that, as to the issuance of the permit,

he had no discretion whatever, except as to the terms of the permit itself. We pass no opinion upon the question whether, in this particular matter, the commissioner of public works was a mere ministerial officer, or an executive officer. Nor do we pass any opinion upon the question whether or not the appellant, as such commissioner, was bound to issue the permit without reference to the question whether, in his opinion, the ordinance of February 3, 1896, was invalid or not. If the appellant had no right to rely upon the invalidity of the ordinance of February 3, 1896, because he was a ministerial officer and was called upon to perform a mere ministerial act, then he had no right to rely upon the invalidity of the repealing ordinance set up in the answer. It appears from the averment in the amended answer that, before the appellant acted upon the second application of the relator, and on May 29, 1899, the common council of the city of Chicago passed an ordinance repealing the ordinance of February 3, 1896. Counsel for appellee insists, that this repealing ordinance was invalid, and did not have the effect of repealing the ordinance of February 3, 1896, upon the alleged ground that the latter ordinance had been acted upon by petitioner, and he had expended money on the faith thereof, and thereby acquired vested rights, which could not be taken from him by a subsequent repeal. (*City of Belleville* v. *Citizens' Horse Railway Co.* 152 Ill. 186). Undoubtedly, no repeal of an existing ordinance can operate to destroy rights of property that have been vested by virtue of its provisions. (Horr & Bemis on Municipal Police Ordinances, sec. 67). We pass no opinion upon the validity or invalidity of the repealing ordinance in the respect thus indicated. But it is conceded by counsel for appellee, that appellant could only act under and in pursuance of the ordinances of the city, and that, if he does issue a permit, he must issue it in accordance with the ordinances of the city. Here, upon the application for a permit being made to him, he was confronted

with the ordinance which, in express terms, repealed the original ordinance upon which appellee relied. He may not have been authorized to consider whether that repealing ordinance was valid or not, but, inasmuch as by its terms it did repeal the original ordinance, he was as much bound to take cognizance of the repealing ordinance, irrespective of its validity or invalidity, as he was to take cognizance of the original ordinance thereby repealed, irrespective of *its* validity or invalidity.

Upon this branch of the case, appellee relies upon the case of *Houston* v. *People ex rel.* 55 Ill. 398, where this court said: "The appellant being town clerk, the act of countersigning the bonds in question was a mere ministerial act. It was not the province of such clerk to determine whether the proper steps had been taken to authorize the issuance of the bonds." If the principle here announced is applicable to the case at bar, then it cannot have been the province of the appellant to determine whether the repealing ordinance was valid or not, but it was sufficient for him to know that there was a repealing ordinance, and, therefore, his power to issue the permit was at least doubtful and questionable. The writ of *mandamus* should not be granted in doubtful cases.

For the reasons above stated, we think that the trial court erred in ordering and adjudging that the appellant should issue and deliver to the petitioner the permit prayed for in his petition.

Accordingly, the judgments of the Appellate Court and of the circuit court are reversed, and the cause is remanded to the circuit court for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*