## Chicago City Railway Company v. The People of the State of Illinois, ex rel. W. A. Hall.

### Gen. No. 11,531.

1. JUDGMENT—*when, reversed for insufficiency of parties.* Where it appears that the judgment entered in a mandamus proceeding requires a joint act, and is itself joint, it must be reversed where it appears that one of the defendants thereto cannot be required to perform in that it was in the hands of a receiver who was not a party to the proceeding.

2. RECEIVER—*who represented by.* A receiver is not the representative of the corporation whose property he holds; he is the officer and representative of the court which appointed him.

3. RECEIVER—*when, necessary party.* A receiver in actual possession of the property of a traction company is a necessary party to a proceeding to compel it to accept a certain fare in exchange for carriage.

Mandamus proceeding. Appeal from the Circuit Court of Cook County; the Hon. FRANK BAKER, Judge, presiding. Heard in this court at the October term, 1903. Reversed and remanded. Opinion filed October 31, 1904.

**Statement by the Court.** This is a petition for mandamus filed March 26, 1903, in the name of the People of the State of Illinois, ex rel. W. A. Hall, against appellant and the Chicago General Railway Company. The relator (among other things) alleges " that he is a citizen of the United States and of the State of Illinois, and a resident of the City of Chicago in the County of Cook and State of Illinois;" that by an ordinance of the city of Chicago, passed February 25, 1887, appellant, which was then a street railway corporation engaged in the carrying of passengers in said city, was granted the use of certain streets for railway purposes. Among the streets so granted is Twenty-second street, east of the Chicago river. The rate of fare was limited to five cents, and "passengers on the Twenty-second street * * * direct lines shall be transferred either way to or from any of the north or south lines of said company which they cross without additional fare;" that the privileges granted by such ordinance " are granted subject to all the general ordinances of the city of

Chicago now in force or hereafter to be passed in reference to horse railways," etc.; that this ordinance was accepted by appellant March 21, 1887; that Twenty-second street runs east and west, and Madison street, two miles north of Twenty-second, parallels that street; that State street, Wabash avenue and Cottage Grove avenue run substantially north and south, and on them the lines and cars of appellant run and are operated between Madison street on the north to termini several miles south of Twenty-second street, which each and all of them intersect; that in 1895 an ordinance was passed by the city of Chicago and accepted by appellant, permitting appellant to change its motive power to electricity; and that appellant completed such change in 1897, and has ever since been thus operating its several lines; that the Chicago General Railway was incorporated under the laws of this state in 1893; that July 5, 1897, appellant and the General Railway Company entered into an operative contract by which the former "demised and leased and by these presents does demise and lease unto said General Company (but not to its successors, assigns or lessees) the use of and the right to use and occupy with its cars the double track street railway, together with the switches and side tracks pertaining thereto owned and occupied by said City Company on Twenty-second street in the city of Chicago from the west side or line of Wabash avenue to the south branch of the Chicago river," * * * for the term of forty-five years; that the system was to be constructed by the City Company, but the General Company was to repair and maintain the same between State street and Wentworth avenue; that the City Company was to furnish the electric current, and the General Company was to pay as rent for the use of said tracks the sum of $225 per month; that the General Company shall run its cars on said tracks in such manner as will freely permit the use of the same by the City Company; that passengers on the cars of either party have no right of transfer to the cars of the other company without additional fare; that each company shall be liable for all damages arising out of

its negligent operation or use of said tracks; that no conveyance by operation of law or otherwise shall be made of the demised premises; that nothing in this agreement shall be construed as preventing the City Company from the use and operation of said tracks.

The relator alleges that since the making of said operative contract the General Company has been and still is using and operating said tracks under the same; that the latter company does not run any of its cars north of Twenty-second street, while the cars of the City Company run about two miles both north and south of that street; that in 1897 the city of Chicago passed a certain ordinance, known as section 1723 of the City Code, which reads as follows:

" Section 1723. The rate of fare to be charged by any person, firm, company or corporation, owning, leasing, running or operating street cars or other vehicles for the conveyance of passengers on any street railway within the limits of the City of Chicago, for any distance within the city limits, shall not exceed five cents for each passenger over twelve years of age and half fare for each passenger over seven and under twelve years of age, for one continuous trip except when such street cars or other vehicles shall be chartered for a specific purpose. And, at any point where any · line of any street railway owned, leased or operated by any person, firm or corporation does now or shall hereafter, within the limits of the City of Chicago, join, connect with, cross, intersect or come within a distance of two hundred feet of any other line of street railway owned, leased or operated by the same person, firm, company or corporation, any passenger who shall have paid his fare on any street car or other vehicles run or operated on such first mentioned line shall, on his request, be entitled to demand and receive from the person or persons in charge of such street car or other vehicle upon which he has so paid his fare, a transfer ticket, which transfer ticket shall entitle such passenger, without further charge to be carried on any other one line adjoining, connecting, crossing and intersecting, as aforesaid, and owned, leased or operated by such person, firm or corporation, for a continuous trip of any distance within the limits of the City of Chicago, if used within one hour after the same is issued, at the time or place for which such transfer ticket was issued."

That each of said companies charges a five cent fare for each passenger conveyed on its line, and the City Company refuses to transfer passengers of the General Company at Twenty-second street either north or south without the payment of an additional fare, and the General Company in like manner refuses to carry passengers coming to its lines on the City Company's lines; that said operative contract is in full force and effect, and under it said General Railway Company is using and operating cars on said tracks.

The prayer of the petition is that each of said roads may by writ of mandamus be directed to receive and carry passengers who have paid full fare to the other road over the lines of the receiving road without additional fare; and for such further orders as justice may require.

The General Company demurred to the petition, and upon the overruling of demurrer, without further pleading, suffered the decree herein entered to go against it, and did not appeal therefrom.

The City Company demurred to the petition, and when that was overruled filed its answer. This answer (among other things) denies that said General Company was operating its cars on said tracks at the date of the filing of such answer, and "states that said Chicago General Railway Company on, to wit, June 14, 1901, ceased to operate cars upon the track of the respondent, and has operated no cars thereon since said date;" that said General Company has not possessed and has not operated any street railway or any car or cars for the conveyance of passengers in the city of Chicago for more than two years last past; that said operative contract became and was forfeited, determined and canceled more than two years prior to the commencement of this action; that said General Company July 5, 1897, and for a long time prior thereto, operated certain street car lines (naming them) west of the South Branch of the Chicago River, but not to the east thereof; that on the date last aforesaid this respondent owned and operated, and still does own and operate, a street railway on that portion of said Twenty-second street in said city from the

South Branch of said river east to Wabash avenue, a distance of about five blocks; that on said date respondent and the General Company entered into said operative agreement to enable the latter to carry its passengers received on its own lines to points on said Twenty-second street between the river and Wabash avenue; and thereafter, and until a receiver was appointed of its said lines and railroads, the General Company ran its cars on Twenty-second street east of the river over the tracks of this respondent; that February 25, 1901, while the General Company was so operating its said road as aforesaid, The Merchants Loan & Trust Company filed its bill of complaint in the Circuit Court of Cook county against said General Company and others to foreclose a certain trust deed theretofore executed by the General Company to said Trust Company as trustee, embracing all and singular the lines, railroad, tracks and property of said General Company, given to secure the payment of its certain bonds and indebtedness, and that afterwards by an order of said court in said cause Frank H. Sellers was appointed receiver of said General Company and of all of its said lines, etc., with the usual powers of receivers in like cases, and was directed to take possession and control of all of said properties, and to operate the same; and thereupon said Sellers qualified as such receiver, and took possession, control and management of said lines, etc., and continued to manage and operate the same until February 27, 1903, when said Sellers resigned as such receiver, and Edwin J. Zimmer was appointed and qualified as his successor, and has ever since possessed, controlled and operated, and still possesses, controls and operates said lines, etc.; that respondent does not own or operate any street car line or lines west of the said river; that said receiver operates its cars east of said river upon Twenty-second street without the permission, consent or authority of this respondent and in violation of the rights of this respondent; and this respondent has always refused to allow said receiver to use its said tracks or any part thereof, and has repeatedly demanded that said receiver forthwith discon-

tinue the use of said tracks; and when, November 21, 1902, this respondent sought to prevent said receiver from operating cars upon said tracks, he, without notice to the respondent, obtained an order from said Circuit Court temporarily enjoining this respondent from so doing; whereupon this respondent filed its answer to the petition of said receiver in that regard, the hearing upon which is yet pending and undetermined in said court; that said relator has no interest whatever in this suit, either individually or as a citizen seeking to enforce the performance of an alleged public duty, and allowed his name to be used herein as relator solely for the purpose of enabling said receiver to institute and carry on this proceeding; that said receiver has paid all the costs of this suit, and has employed and agreed to pay the attorneys representing 'said petitioner; that said relator is in the employ of said receiver in the operation of said road upon salary, and that neither said receiver nor said relator is acting in this behalf in good faith, or in the interest of the public, but they are' seeking by this means to avoid the terms of said lease or contract under which said receiver claims the right to operate cars on said Twenty-second street upon the tracks of this respondent, in order to secure greater financial returns from the operation of said lines so possessed and controlled by said receiver, etc., and prays judgment, etc.

The relator filed a general demurrer to this answer June 3, 1903. June 9, 1903, said demurrer was sustained, and appellant elected to stand by its answer; whereupon a judgment order was entered in substance as follows: It recites that said Chicago General Railway Company having elected to stand by its demurrer to said petition, and said Chicago City Railway Company having elected to abide by its said answer, it is therefore ordered and directed by the court, on motion of said relator, that a writ of mandamus be issued, "Directing that at any point where Chicago City Railway Company joins, connects with, crosses, intersects or comes within a distance of 200 feet of the line of Chicago General Railway Company on Twenty-second street east of the south branch of the Chicago river, as alleged in the petition,

Chicago City Railway Company shall receive and carry passengers, without further charge from such places, north or south on its lines where such passengers have paid their fare to Chicago General Railway Company for a ride on Chicago General Railway Company on Twenty-second street east of the south branch of the Chicago river, where such passengers present themselves at such places to be carried by Chicago City Railway Company within one hour after having been transferred from such points to Chicago City Railway Company.

" Directing that at any point where Chicago City Railway Company joins, connects with, crosses, intersects or comes within a distance of 200 feet of the line of Chicago General Railway Company on Twenty-second street east of the south branch of the Chicago river, as alleged in the petition, Chicago City Railway Company shall issue a transfer ticket to each passenger, when requested, at such places where such passengers have paid their fare to Chicago City Railway Company, transferring such passengers to Chicago General Railway Company at such places.

" Directing that at any point where Chicago General Railway Company joins, connects with, crosses, intersects or comes within a distance of 200 feet of the line of Chicago City Railway Company east of the south branch of the Chicago river on Twenty-second street, as alleged in the petition, Chicago General Railway Company shall receive and carry passengers without further charge from such places east or west on its lines, where such passengers have paid their fare to Chicago City Railway Company for a ride on Chicago City Railway Company, and where such passengers present themselves at such places to be carried on Chicago General Railway Company within one hour after having been transferred from such points to Chicago General Railway Company.

" Directing that at any point where Chicago General Railway Company joins, connects with, crosses, intersects or comes within a distance of 200 feet of the line of Chicago City Railway Company along Twenty-second street east of the south branch of the Chicago river, as alleged in

the petition, Chicago General Railway Company shall issue a transfer ticket to such passengers when requested at such places, where such passengers have paid their fare to Chicago General Railway Company, transferring such passengers to Chicago City Railway Company at such places."

To the entry of such judgment appellant duly excepted and prayed for and perfected this appeal.

E. R. BLISS and GEORGE GILLETTE, for appellant.

GLENN E. PLUMB, for appellee.

MR. JUSTICE BALL delivered the opinion of the court.

In the present state of the record we decline to investigate the merits of this controversy.

The demurrer to the answer of appellant having been sustained, and appellant having elected to stand by its answer, all properly-pleaded allegations thereof are to be taken as true. This rule is too well settled to require the citation of authorities. It is therein admitted that since early in the year 1901 the General Company has not been and is not now in the possession, control or operation of any of its lines or tracks or cars mentioned in the petition and answer; and that on such date its possession, control and use of such properties were taken from it and vested in a receiver. It follows that the General Company is powerless to obey the judgment entered herein. That judgment is joint, commanding each of these street railway companies, under certain prescribed conditions, to receive passengers from the other company without the payment of additional fare. It being physically impossible for the General Company to obey this judgment, it is bad as to such company; and being joint it is therefore bad as to the City Company.

It is also admitted that at the time the petition was filed a receiver was, and for two years prior thereto had been, in the actual and exclusive control and operation of all the properties of the General Company. That receiver is not made a party to the petition. A receiver is not the representative of the corporation whose property he holds; he is

the officer and representative of the court which appointed him. 24 Am. & Eng. Ency., 2nd ed., p. 26, and cases cited in note. A mandamus proceeding is an action at law. Under the rules of pleading governing such actions, a judgment will not be entered where it appears without dispute that a party having a legal interest in the contract sought to be enforced is not before the court. If there be a valid excuse for not bringing in such a party, that excuse must be alleged and proved by the relator or plaintiff. Dement v. Rokker, 126 Ill. 190, and cases cited; Peck v. Board, etc., 90 Cal. 384; Cullem v. Latimer, 4 Tex. 329; State v. Jones, 1 Ired. L. 129; 2 Spelling on Extra Relief, sec. 1369. The rule in chancery is the same. Atkins v. Billings, 72 Ill. 597.

The receiver, being in actual possession of the properties of the General Company, and being engaged in the operation of the same to the entire exclusion of that company at the time the petition was filed, was a necessary party to this proceeding. That he was not made a party constitutes reversible error, since he is not bound by the judgment entered herein.

" The writ of mandamus is a high prerogative writ, to be awarded in the discretion of the court, and ought not to issue in any case, unless the party applying for it shall show a clear legal right to have the thing sought by it done, and in manner and by the person or body sought to be coerced, and must be effectual as a remedy if enforced, and it must be in the power of the party, and his duty also, to do the act sought to be done. It is well settled, that, in a doubtful case, this writ should not be awarded. It is never awarded unless the right of the relator is clear and undeniable, and the party sought to be coerced is bound to act." People v. Hatch, 33 Ill. 9. See, also, People v. Mayor, 51 Ill. 28; People v. Lieb, 85 Ill. 484; People v. Klokke, 92 Ill. 137; People v. Village of Crotty, 93 Ill. 180; North v. Trustees, 137 Ill. 296; and McGann v. People, 194 Ill. 526.

The judgment of the Circuit Court is reversed and the cause is remanded.            *Reversed and remanded.*