# THE PEOPLE *ex rel.* Edward Phillips

*v.*

# HERMAN LIEB, County Clerk, etc.

1. COUNTY CLERK—*delivery of assessors' books, etc.* Where a county clerk delivers the assessor's book and blanks of a town to one appointed to the office of assessor, and who is clothed with the proper evidence of such appointment, he has discharged his duty, and can not be compelled to deliver the same to another person claiming the same office by election. On *mandamus* to compel him to make such delivery, the only question is as to

the *fact* of the appointment of the person who has received the books, etc., and not as to the *rightfulness* of it.

2. ASSESSOR—*acts of, de facto, are valid.* Where the proper appointing power in a town meet and determine that there is a vacancy in the office of assessor by a failure to elect one, and appoint one who qualifies, his acts in making the assessment as a *de facto* officer will be good and valid until he is ousted by a proper proceeding for that purpose.

3. MANDAMUS—*when it lies.* A *mandamus* will not be awarded except in a clear case. It is not granted as a matter of absolute right; and where it can be seen that it can not accomplish any good purpose, or that for which it is sought, it will be denied.

This was an application for a *mandamus* in this court.

Messrs. HAINES & TRIPP, and Messrs. BARGE & DIXON, for the relator.

Mr. M. F. TULEY, and Mr. EDWARD S. ISHAM, for the respondent.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This is a petition, filed June 6, 1876, for a writ of *mandamus* to Herman Lieb, county clerk of Cook county, to require him to deliver to the petitioner the books and blanks prepared by such clerk for the assessment of the real and personal property of the town of South Chicago, for the year 1876, petitioner claiming to be assessor of said town, elected as such at the annual election on the 4th day of April, 1876. The county clerk, in his answer filed June 14, 1876, among other things, sets up, that on the 15th day of April, 1876, the justices of the peace of the town of South Chicago and the supervisor and town clerk of the town, at a meeting by them held, determined that there had been a failure by said town to elect an assessor of the town at the annual town meeting on April 4, 1876, and that they thereupon, by warrant under their hands and seals, appointed one William B. H. Gray assessor of the town; that the same was duly certified to the respondent as county clerk; that said Gray took the oath of office prescribed by law, and filed the same in the office of the

town clerk of the town; that afterward, before the commencement of the suit, and before May 1, 1876, (the time limited for the delivery of the books,) Gray, as such assessor, called upon the respondent and demanded such books and blanks; whereupon he, believing that petitioner had not been elected assessor of the town, and that Gray was the lawful assessor, and had been lawfully appointed such, did deliver all said books and blanks to the said Gray, as the assessor of the town; that Gray ever since has held the same, and that since the first day of May, 1876, he has been actively engaged as such assessor, in making the appraisement of property in the town, using the books and blanks in so doing; that he has a large part of the assessment now made, and, as respondent is informed and believes, will have the entire assessment of the town completed on or before the first day of July, 1876—the day fixed by law for the return of the assessment; that respondent has no control or power over said books and blanks; that to prepare new books and blanks for the assessment of property in the town would require at least six weeks, and that the same could not be done in time to deliver to the petitioner before the time required by law to make return of the assessment, and that it would be physically impossible to make out new assessment books and have a new assessment of property in said town, for the purposes of taxation for the year 1876.

The answer is demurred to.

The provision of the statute under which the appointment of Gray was made, is as follows:

"*Board of Appointment.*] Whenever any town shall fail to elect the proper number of town officers to which such town may be entitled by law, or when any person elected to any town office shall fail to qualify, or whenever any vacancy shall happen in any town, from death, resignation, removal from the town, or other cause, it shall be lawful for the justices of the peace of the town, together with the supervisor and town clerk, to fill the vacancy by appointment, by warrant under their hands and seals; and the persons so appointed shall hold their respective offices during the unexpired term of the persons in whose

stead they have been appointed, and until others are elected and appointed in their places, and shall have the same powers and be subject to the same duties and penalties as if they had been duly elected or appointed by the electors." Rev. Stat. 1874, p. 1079, § 97.

We do not see but what the county clerk has performed his duty in the premises. He has already made delivery of the assessment books, etc., to an assessor appointed to such office by the lawful appointing power. Whether the board of appointment rightly or not found that there had been a failure to elect an assessor, which has been so prominently discussed in the argument, we do not conceive to be involved in this proceeding. We regard the only question here to be, upon the *fact* of appointment, not upon the *rightfulness* of the appointment. The board of appointment here did expressly find that there had been a failure to elect an assessor, and filled the vacancy so found, by appointment made in legal form. A similar question arose in *Wood* v. *Peake*, 8 Johns. 69, where three justices of the peace had made an appointment of constable under a statute authorizing such appointment to be made in the case of a refusal to serve by a constable elected. In an action of trespass against such appointee, for taking goods as constable under an execution, the lower court admitted proof that there had been no refusal to serve by the officer elected. This was held, in the Supreme Court, to be error, and the judgment for the plaintiff below was reversed because of the admission of such evidence to impeach the appointment. The same point was made there, as here, that it was only in the case of refusal to serve, that the appointing officers had jurisdiction to appoint, and on it being shown there was no refusal to serve, that there was no jurisdiction, and the appointment was void. It was there said: "This appointment is a judicial act, for the justices must first determine and adjudge that there is a vacancy in the office, and that the town neglected to fill it up. It is not traversable in such a collateral action. The appointment remains valid until it be set aside, or quashed in the regular course upon *certiorari*. It is cer-

tainly sufficient to justify the constable. He comes to the office by an appointment, regular according to the forms of law, and made by a tribunal having jurisdiction in the case." The doctrine of this case was sanctioned in *The People* v. *Seaman*, 5 Denio, 412, *Green* v. *Burke*, 23 Wend. 502, and *Colton* v. *Beardsley*, 38 Barb. 51. In the latter case, in reference to an analogous question, ROSEKRANS, J., after reciting the statutory provisions authorizing the remaining trustees, in the case of a vacancy in the office of a trustee of a school district, to call a special meeting of the inhabitants to fill the vacancy, says: "Under these provisions of the statute the question, whether there is a vacancy in the office of a trustee must be determined *in limine* by the other trustees. It is a question calling for the exercise of their judgment and discretion, and their action upon it partakes of the character of a judicial act. * * The test of jurisdiction in such case is, whether the tribunal has power to enter upon the inquiry, and not whether its conclusions in the course of it were right or wrong."

It must be conceded, that a person assuming to discharge the duties of the office of assessor under such an appointment as in this case, and being otherwise qualified in accordance with the statute, was an assessor *de facto*.

In *Brown* v. *Lunt*, 37 Me. 428, an officer *de facto* is described as one who actually performs the duties of the office with apparent right, under claim of color of appointment or election.

In *Ex parte Strang*, 21 Ohio St. 610, in speaking upon the subject of what will constitute an officer *de facto*, it is said: "The true doctrine seems to be, that it is sufficient if the officer holds the office under some power having color of authority to appoint, and that a statute, though it should be found repugnant to the constitution, will give color." In *The People ex rel.* v. *Bangs*, 24 Ill. 184, this court, after pronouncing that a law providing for the election of a circuit judge was not authorized by the constitution, and that the election was void, add: "It gave Judge BANGS (who had been elected under the

law) color of office, no doubt, and, acting as he did under color of office, his acts were as valid, of course, as if the law had been constitutional." To constitute an officer *de facto,* it is not necessary that he should derive his appointment from one competent to invest him with a good title to the office. *Fowler* v. *Bebee,* 9 Mass. 232; *Conover* v. *Fowler,* 10 id. 291.

A person actually obtaining office with the legal indicia of title, is a legal officer until ousted, so far as to render his official acts valid, as if his title were not disputed. *Benoit* v. *Auditors of Wayne County,* 20 Mich. 176.

It is the well settled doctrine, that the acts of an officer *de facto,* who comes into office by color of title, are valid as it concerns the public, or third persons who have an interest in his acts.

A mere ministerial officer has no right to decide on the acts of such officer *de facto,* or adjudge them to be null. The *People* v. *Collins,* 7 Johns. 549.

These assessment books, then, are in the hands at least of an assessor *de facto,* who, as respects the public and third persons, has authority, until ousted, to proceed in the discharge of the duties of assessor, and to make use of the books in so doing. When Mr. Gray, clothed with the appointment of assessor which he possessed, appeared before the county clerk, and, as assessor, demanded the assessment books, it was not the duty of the clerk to inquire into and decide upon the right of the appointment, but he might act upon the fact of the appointment; and he was justifiable in regarding and treating the applicant as assessor, and in delivering to him the books, and in so doing he has discharged all the duty in that regard incumbent on him. His acts and doings with such appointed assessor must be held, as if with the rightful assessor. The reception of the books by Gray was an official act of an assessor in fact, to be held as a valid and proper act, and, consequently, the delivery of the books to him by the county clerk is to be sustained as a proper act. It would be to pervert this writ of *mandamus* to a most extraordinary purpose, to issue a command to this clerk, which would require him to get

back these books out of the hands of the appointed assessor who is now making use of them, and deliver them to another rival assessor. There can be no such duty incumbent upon the clerk, as to prepare new assessment books at the great expense and labor it would require, and deliver them to the petitioner. And without the doing of the one or other of these things, the object sought for by the writ of *mandamus* could not be accomplished. The respondent has once acted in delivering the books and blanks to one who was, at least, an assessor *de facto*, and he is to be protected in so doing. There is no obligation of law to bind him further. He must be taken as having already discharged the full measure of his statutory duty in this respect.

This court said, in *The People ex rel.* v. *Hatch*, 33 Ill. 140, that a *mandamus* should not issue in any case unless the party applying for it shall show a clear legal right to have the thing sought by it done, and in the manner and by the person or body sought to be coerced, and must be effectual as a remedy if enforced, and it must be in the power of the party, and his duty also, to do the act sought to be done; and the writ is never awarded unless the right of the relator is clear and undeniable, and the party sought to be coerced bound to act. See also, *The People* v. *Dubois*, id. 9; *The People* v. *Chicago and Alton Railroad Co.* 55 id. 95; *Menard* v. *Hood*, 68 id. 121; *The People* v. *Illinois Central Railroad Co.* 62 id. 510; *Universal Church* v. *Columbia Township*, 6 Ohio, 446.

As the writ of *mandamus* is not grantable as of absolute right in all cases, and the exercise of the jurisdiction in granting it rests, to a considerable extent, in the sound discretion of the court, the futility of a grant of the writ at this late hour, and the public inconvenience which would ensue if the object sought for by the writ should be attained, in leading to very great embarrassment in the assessment of property and collection of the taxes for the year 1876, might be dwelt upon as considerations to influence the exercise of a wise judicial discretion in the matter.

But it is unnecessary. In view of what has already been

said, we are satisfied that, upon the facts set up in the answer, which stand admitted by the demurrer, there is here no proper case for the award of a writ of *mandamus*.

The demurrer to the answer is, therefore, overruled, and the writ refused.

*Mandamus refused.*

Mr. JUSTICE SCOTT: I do not concur either in the reasoning or conclusion of this opinion.