DOMINICK J. LAVIN, Plaintiff in Error, *vs.* BOARD OF COMMISSIONERS OF COOK COUNTY *et al.* Defendants in Error.—CÆSAR DAL PINO, Plaintiff in Error, *vs.* BOARD OF COMMISSIONERS OF COOK COUNTY *et al.* Defendants in Error.

*Opinion filed June 29, 1910.*

1. COURTS—*whether cause exists for appointing special State's attorney is a question for the court.* Whether legal cause exists for the appointment of a special State's attorney under section 6 of chapter 14 of the Revised Statutes is a question involving the exercise of judicial discretion by the court.

2. SAME—*filing of petition gives court jurisdiction of matter of appointing special State's attorney.* The filing of a petition by a State's attorney asking for the appointment of a special State's attorney upon grounds set forth in the petition gives the court jurisdiction of the subject matter and requires it to determine judicially whether a proper case exists for such appointment.

3. STATE'S ATTORNEYS—*order appointing special State's attorney not void for mere error.* An order of a court of competent jurisdiction appointing a special State's attorney upon a petition setting forth the reasons for such appointment is not void because of mere error of the court in exercising its discretion.

4. SAME—*when special State's attorney is at least a de facto officer.* A special State's attorney appointed by a court of competent jurisdiction upon a petition setting forth the reasons for such appointment is at least a *de facto* special State's attorney, and the propriety of appointing him in the first instance cannot be inquired into in a proceeding to enjoin the county board from paying him compensation.

5. INJUNCTION—*tax-payer cannot enjoin de facto officer from receiving pay.* A court of equity will not take jurisdiction of a bill by a citizen and tax-payer to contest the title to office of a *de facto* incumbent thereof, nor to enjoin him from performing his duties or receiving the fees, salary or emoluments pertaining to the office. (*Burgess* v. *Davis,* 138 Ill. 578, followed.)

6. PRACTICE—*effect of a motion to dismiss a bill for want of equity.* A motion to dismiss a bill for want of equity is properly treated as a general demurrer admitting all facts well pleaded in the bill.

7. SAME—*when pleas may be regarded as abandoned by motion to dismiss.* Where the complainant, after pleas have been filed, moves for a temporary injunction, and the defendant thereupon

moves to dismiss the bill for want of equity on its face, and induces the court, without objection from the complainant, to treat such motion as a general demurrer, the pleas will be deemed to have been abandoned, and if there is no equity in the bill the court may properly dismiss it.

DUNN, CARTWRIGHT and COOKE, JJ., dissenting.

WRIT OF ERROR to the Branch Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. JULIAN W. MACK, Judge, presiding.

HENRY M. ASHTON, for plaintiff in error Lavin.

DAVID K. TONE, for plaintiff in error Dal Pino.

HORACE K. TENNEY, and ALBERT M. KALES, for defendant in error Loesch.

Mr. CHIEF JUSTICE VICKERS delivered the opinion of the court:

Dominick J. Lavin, a tax-payer of Cook county, filed a bill in equity against the board of commissioners, the comptroller, the treasurer of Cook county and Frank J. Loesch to enjoin the county officials from paying out any sums of money from the county treasury, on account of fees or salaries, to the said Loesch as special State's attorney of said county and to restrain the payment of any fees or salaries to the assistants of said Loesch. All of the defendants below filed an answer, to which a replication was filed. The hearing in the circuit court resulted in a decree denying to the complainant any relief in respect to the payments to the assistants to said Loesch, but granted the prayer of the bill so far as it sought to enjoin the payment of any fees or salaries to said Loesch for his personal services as special State's attorney. The circuit court held that there was no provision of law by which Loesch, as special State's attorney, could receive any compensation, but that the as-

245—32

sistants of said Loesch were entitled to compensation in the same manner as the assistants of the regular State's attorney. Loesch sued out a writ of error from the Appellate Court for the First District, and that court reversed the decree of the circuit court in so far as it granted an injunction against the payment of compensation to Loesch and remanded the cause to the circuit court, with directions to that court to modify the decree in accordance with the views of the Appellate Court. The effect of the decision of the Appellate Court is to deny complainant below any relief whatever under his bill, and a dismissal of the bill for want of equity would necessarily follow if the cause was remanded to the circuit court. The cause has been removed to this court by a writ of *certiorari*.

The bill charges that it was the duty of the board of commissioners, within the first quarter of each fiscal year, beginning with the month of December, to adopt an annual appropriation bill, by which they should appropriate so much money as was necessary to defray all necessary expenses or liabilities to be paid during the ensuing year; that no appropriation was made within the first quarter of the fiscal year of 1908 for the purpose of paying any fees or salaries to said Loesch as special State's attorney or to any of his assistants, and that, notwithstanding such failure to make an appropriation for such purpose, the finance committee of the board of commissioners adopted a resolution appropriating the sum of $19,500 out of the miscellaneous fund for the purpose of paying the salaries and expenses in connection with an investigation to be made by said Loesch, who had theretofore been appointed special State's attorney for the purpose of investigating certain frauds alleged to have been committed during the primary election of August, 1908. It is further alleged in the bill that on October 8, 1908, one John J. Healy was the duly elected and acting State's attorney of Cook county; that as such it became and was his duty to prosecute all criminal

actions unless he was sick or absent or unable to attend or was interested therein; that on said day the said Healy was not sick or absent, was not unable to attend to his duties or interested in said investigation except as a citizen and official of the county, and that there was no necessity, as a matter of law or fact, for the appointment of any special State's attorney to prosecute the said alleged frauds, and that said duty devolved upon said Healy as State's attorney. The theory of the bill is that there was no legal ground for the appointment of a special State's attorney, and that the order of the criminal court of Cook county purporting to appoint said Loesch was void.

The answer of the defendants below, after admitting certain formal matters in regard to the official capacity of the county officers, alleges that on September 22, 1908, John J. Healy, State's attorney of Cook county, filed a petition in the criminal court of said county in which he alleged that a primary election was held in Chicago on August 8, 1908, under the provisions of the Primary Election law, which took effect July 1, 1908; that at said election he, said Healy, was a candidate for the nomination on the republican ticket for the office of State's attorney, to be voted upon at the next general election to be held in November following; that at the same primary election one John E. W. Wayman and one Edward Litzinger were opposing candidates for the nomination for State's attorney on the republican ticket; that by the returns of the canvassing board made on the 24th day of August, 1908, it appeared that Wayman had received more votes than either of the other candidates; that immediately after the primary election Healy was advised that gross frauds were perpetrated in many of the polling places, which affected the legality of the vote for and against him; that thereupon he commenced an investigation, and as a result thereof filed a petition in the county court of Cook county against Wayman to contest his right to the nomination for

the office of State's attorney; that in his petition for contest the State's attorney asked that all evidences of fraud be heard and all fraudulent votes stricken out and that he be declared the successful candidate; that thereupon, on September 9, 1908, the county court proceeded to a hearing of said contest and re-counted all of the republican ballots cast for State's attorney and then proceeded to take evidence in regard to the charges of fraud, and that said cause was still pending and on hearing in the county court on the date said petition was presented. Said petition alleged that many witnesses testified to violations of the Election law at said primary election, to the prejudice of Healy's candidacy. The petition alleged that much evidence had been collected by Healy, in his capacity as a contestant, which tended to prove that many persons in the city of Chicago were guilty of misdemeanors and felonies punishable under the Primary Election law, and that certain judges and clerks who had assisted in holding said primary election were guilty of conspiracies to do illegal acts in violation of the Primary Election law and injurious to the administration of public justice, and that much more evidence was easily obtainable if a proper investigation was made for the purpose of bringing to punishment parties guilty of offenses against the Primary Election law; that by reason of his personal interest in the contest then pending in the county court it was inexpedient that Healy take any action as, a prosecutor and as State's attorney toward bringing to justice persons who were supposed to have violated the Primary Election law so long as the said contest was pending and so long as the evidence in such criminal prosecutions should have any bearing on the contest then pending. Said petition prayed that the court appoint some competent attorney to investigate and inquire into all violations of the Primary Election law alleged to have been committed in Chicago on August 8, 1908, and to prosecute such persons as the person so appointed should

consider to have been guilty of criminal acts in connection with the said primary election. The answer further alleged that said petition was duly presented to and considered by the criminal court of Cook county, and on September 30 an order was made finding the petition to be true, and that John J. Healy, State's attorney for Cook county, and William H. Stead, Attorney General of Illinois, are personally interested in the subject matter of such prosecutions, and ordered that Frank J. Loesch be appointed special State's attorney "to investigate and prosecute any and all persons against whom there shall appear to be just and reasonable grounds to establish guilt of criminal offenses committed in violation of the Primary Election law in force July 1, 1908, at a primary held in Cook county on August 8, 1908."

The principal error assigned in this court is, that the Appellate Court erred in reversing that part of the decree of the circuit court enjoining the payment of any compensation whatever to Frank J. Loesch for his services as special State's attorney. There are no cross-errors assigned in this court and none were assigned in the Appellate Court. That portion of the decree of the circuit court refusing an injunction against the payment of assistants of said Loesch is not in question on this record.

Section 6 of chapter 14 of Hurd's Revised Statutes provides as follows: "Whenever the Attorney General or State's attorney is sick or absent, or unable to attend, or is interested in any cause or proceeding, civil or criminal, which it is or may be his duty to prosecute or defend, the court in which such cause or proceeding is pending may appoint some competent attorney to prosecute or defend such cause or proceeding; and the attorney so appointed shall have the same power and authority, in relation to such cause or proceeding, as the Attorney General or State's attorney would have had if present and attending to the same."

Under this statute any court in a proper case may exercise the power of appointing a special State's attorney,

whose authority will be limited to the special matter for which he was appointed. This is not questioned, but it is contended by plaintiff in error that an appointment for a cause not prescribed by the statute is a nullity and may be questioned in any proceeding, either direct or collateral. We cannot assent to this view. The appointment of a special State's attorney is the exercise of judicial power, and the court making the appointment is required, in the first instance, to determine whether the legal contingency has arisen authorizing the exercise of such power. The filing of a petition by the State's attorney setting up facts which were supposed to make it proper or expedient to appoint a special State's attorney gave the court jurisdiction of the subject matter and required the court to determine judicially whether a proper case existed for the appointment of a special State's attorney. The jurisdiction of the court being thus invoked, any mere error which the court might commit in the exercise of such jurisdiction would not render its judgment void. Section 6 of the statute above quoted clearly gives the courts of this State the power to appoint special State's attorneys under some circumstances. To properly construe the statute and determine what will and what will not present a proper case for such appointment clearly involves the exercise of judicial power, and it is easy to see that different courts might differ as to the extent and character of the interest of the Attorney General or State's attorney which would justify the appointment of a special officer under the statute. There is a broad distinction between judicial proceedings which are without jurisdiction and those in which error occurs in the exercise of jurisdiction. We are not called upon in this proceeding to review and correct any alleged errors that the criminal court of Cook county may have committed in appointing a special State's attorney. The court had jurisdiction, and however erroneous its subsequent proceedings may be, they are not to be regarded as void and subject to collateral attack.

A statute in force in 1874 provided as follows: "Whenever any town shall fail to elect the proper number of town officers to which such town may be entitled by law, or when any person elected to any town office shall fail to qualify, or whenever any vacancy shall happen in any town, from death, resignation, removal from the town, or other cause, it shall be lawful for the justices of the peace of the town, together with the supervisor and town clerk, to fill the vacancy by appointment, by warrant under their hands and seals; and the persons so appointed shall hold their respective offices during the unexpired term of the persons in whose stead they have been appointed, and until others are elected and appointed in their places, and shall have the same powers and be subject to the same duties and penalties as if they had been duly elected or appointed by the electors." (Rev. Stat. 1874, sec. 97, p. 1079.) Under this statute the proper officers of the town of South Chicago appointed William B. H. Gray assessor of said town and the county clerk delivered to Gray the books and blanks properly belonging to the assessor's office. Another person claiming to be the duly elected assessor for said town filed a petition for a *mandamus* against the county clerk to compel him to deliver the proper books and blanks belonging to the assessor's office to the petitioner. The petition was answered, setting up the appointment of Gray and stating that by virtue of such appointment he had entered upon the discharge of his duties. The answer did not show that there was a vacancy in the office of town assessor at the time the appointment was made, and the answer was demurred to. This court, in the case of *People* v. *Lieb*, 85 Ill. 484, in discussing that case, on page 487 said: "We do not see but what the county clerk has performed his duty in the premises. He has already made delivery of the assessment books, etc., to an assessor appointed to such office by the lawful appointing power. Whether the board of appointment rightly or not found that there had been a

failure to elect an assessor, which has been so prominently discussed in the argument, we do not concede to be involved in this proceeding. We regard the only question here to be upon the *fact* of appointment,—not upon the *rightfulness* of the appointment. The board of appointment here did expressly find that there had been a failure to elect an assessor and filled the vacancy so found by appointment made in legal form. A similar question arose in *Wood* v. *Peake,* 8 Johns. 69, where three justices of the peace had made an appointment of constable under a statute authorizing such appointment to be made in the case of a refusal to serve by a constable elected. In an action of trespass against such appointee for taking goods, as constable, under an execution, the lower court admitted proof that there had been no refusal to serve by the officer elected. This was held in the Supreme Court to be error, and the judgment for the plaintiff below was reversed because of the admission of such evidence to impeach the appointment. The same point was made there as here, that it was only in the case of refusal to serve that the appointing officers had jurisdiction to appoint, and, on it being shown there was no refusal to serve, that there was no jurisdiction and the appointment was void. It was there said: 'This appointment is a judicial act, for the justices must first determine and adjudge that there is a vacancy in the office and that the town neglected to fill it up. It is not traversable in such a collateral action. The appointment remains valid until it be set aside or quashed in the regular course upon *certiorari.*' "

A similar question arose in *Colton* v. *Beardsley,* 38 Barb. 51. In the course of the decision of that case, Rosekrans, J., said: "Under these provisions of the statute the question whether there is a vacancy in the office of a trustee must be determined *in limine* by the other trustees. It is a question calling for the exercise of their judgment and discretion, and their action upon it partakes of the charac-

ter of a judicial act. * * * The test of jurisdiction in such case is whether the tribunal has power to enter upon the inquiry, and not whether its conclusions in the course of it were right or wrong." This case was quoted and approved by this court in *People* v. *Lieb, supra.*

Loesch having been appointed special State's attorney by a court of competent jurisdiction and having entered upon the discharge of his duties as such, must be regarded as properly in the exercise of his duties, and the propriety of the action of the court in appointing him in the first instance cannot be inquired into in this proceeding. Without expressing any opinion as to the court's action in appointing Loesch special State's attorney,—which question, as we have seen, is not open to review upon the present record,—we think it must be conceded by all that Loesch was at least a *de facto* special State's attorney. A *de facto* officer has been variously defined. Lord Ellenborough, in *King* v. *Bedford Level,* 6 East, 356, defined a *de facto* officer to be "one who has the reputation of being the officer he assumes to be and yet not a good officer in point of law." This definition, it will be noted, omits the necessity for color of election or appointment, and it is said that the majority of cases approve it so far as the rights of third persons are concerned. (Mechem on Public Officers, sec. 317.) In *State* v. *Carroll,* 38 Conn. 449, Butler, C. J., defines a *de facto* officer as follows: "An officer *de facto* is one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid so far as they involve the interest of the public and third persons, where the duties of the office were exercised." This court, in *People* v. *Lieb, supra,* cited with approval *Brown* v. *Lunt,* 37 Me. 428, where a *de facto* officer is described as one who actually performs the duties of the office with apparent right, under claim of color of appointment or election; and also the case of *Ex parte Strang,* 21 Ohio St. 610, where it is said: "The true doctrine

seems to be, that it is sufficient if the officer holds the office under some power having color of authority to appoint, and that a statute, though it should be found repugnant to the constitution, will give color." The court further says in the *Lieb case:* "To constitute an officer *de facto* it. is not necessary that he should derive his appointment from one competent to invest him with a good title to the office,"—citing *Fowler* v. *Beebe,* 9 Mass. 232, and *Conover* v. *Fowler,* 10 id. 291.

Under the undisputed facts appearing in this record Loesch was a *de facto* special State's attorney under any definition that may be applied to him and as such entitled to compensation. If we are right in this conclusion and if Loesch was at least a *de facto* special State's attorney, then the next inquiry is, has plaintiff in error, as a citizen and a tax-payer, any standing in a court of equity to enjoin him. from the performance of the duties of his office or from receiving the emoluments. thereof?

The doctrine is well settled that a court of equity is not the proper forum to determine a contest between conflicting claims of title to an office. (High on Injunctions, sec. 1312, and cases there cited.) In section 1314 of High on Injunctions it is said: "It may be affirmed as a general and well established rule that equity will not lend its interference in a contest between conflicting claimants to an office to enjoin the incumbent *de facto* from receiving the salary, fees or emoluments pertaining to such office, since such interference would, in effect, practically decide the disputed question of title involved, and would thus usurp to a court of equity, through its preventive remedy by injunction, a jurisdiction which can only be exercised in a legal forum." The rule laid down by High, above quoted, has often been approved by this and other courts.

The case of *Burgess* v. *Davis,* 138 Ill. 578, is an authority in this State directly in point and must be held controlling upon the point now under consideration. The *Burgess*

*case* was a bill in chancery filed by a tax-payer on behalf of himself and all other tax-payers of Cook county, against the county clerk, county treasurer and Richard Prendergast, to enjoin the county officers from paying out of the county treasury any money to Judge Prendergast on account of salary due him as county judge.   The ground upon which the tax-payer based his right to an injunction was, that Prendergast had accepted the office of trustee of the Sanitary District of Chicago, which was incompatible with his office as county judge, whereby, it was contended, he had resigned the office of judge of the county court and that said office had become vacant, and that Prendergast was not entitled to any salary as judge of the county court and that the same ought not to be paid to him out of the public funds of the county.   In disposing of that case this court, on page 581, quoted from High on Injunctions, as follows: "Courts of equity will not interfere by injunction to determine questions concerning the appointment or election of public officers or their title to office, such questions being of a purely legal nature and cognizable only by courts of law."   It was admitted by the bill that Prendergast was *de facto* county judge, and this court, on page 582, further said: "A court of equity will not entertain jurisdiction for the purpose of enjoining a *de facto* incumbent of an office from performing its duties.   Such result must be effected by judgment of ouster in a *quo warranto* proceeding.   It follows that equity will not interfere to enjoin the payment of fees, salaries or emoluments to a *de facto* incumbent of an office.   Public policy will prevent the courts from interfering to disturb a *de facto* officer in the receipt of the fees,"—citing *Stone* v. *Wetmore,* 24 Ga. 601.

We do not think that the case at bar can be distinguished from the *Burgess case,* and under the authority of that case plaintiff in error cannot maintain his bill.   The judgment of the Appellate Court, although not based upon the grounds of our decision, is nevertheless correct in the

result which it reaches. As already pointed out, the effect of the decisions of the circuit court and the Appellate Court is to deny plaintiff in error any relief under his bill, and this, as we have seen, is the result reached by this court.

On December 21, 1908, and after this case had been disposed of, another bill was filed by Cæsar Dal Pino, another tax-payer of Cook county, against the board of county commissioners, Joseph F. Haas, comptroller, John R. Thompson, treasurer, and Frank J. Loesch, for the purpose of enjoining the payment of any money out of the county treasury for the salary of Loesch or for the compensation of his assistants, investigators and other employees. A general demurrer was interposed to this bill by all of the defendants below except Loesch, who filed certain pleas to parts of the bill and demurred to the remainder. By his first plea Loesch alleged that on the 18th day of November, 1908, said Lavin's suit came on for hearing, and the court perpetually enjoined the board of commissioners of Cook county, and the comptroller and treasurer of said county, from paying to. said Loesch any money for services personally rendered by him in connection with said primary frauds. The second plea alleged that Loesch was a *de facto* State's attorney, and that the question of the regularity of his appointment could only be inquired into in an action of *quo warranto*. The third plea alleged that in the decree in the Lavin suit above referred to, it was adjudged and determined that the expenses in connection with the investigation of said primary frauds and the salaries of the assistants of said Loesch were a lawful charge upon the county and the same could lawfully be paid by the county board. While these pleas were pending and undisposed of, complainant, Dal Pino, made a motion for a temporary injunction, and thereupon Loesch made a cross-motion to dismiss the bill for want of equity appearing upon its face. Upon a hearing of these motions the court denied the application for a temporary injunction and sus-

tained the cross-motion and dismissed the bill for want of
equity. The decree thus entered by the superior court upon
appeal was affirmed by the Branch Appellate Court for the
First District. By a writ of *certiorari* the record has been
brought to this court for review, and the cause has been
consolidated with the *Lavin case* and the two heard to-
gether in this court.

The only question presented in the *Dal Pino case* which
is not disposed of by what has already been said in the
*Lavin case* relates to a matter of practice. It is contended
by plaintiff in error that the court erred in dismissing the
bill for want of equity, on motion, after pleas had been
filed. The practice of treating a motion to dismiss a bill
for want of equity apparent upon the face of the bill as
a general demurrer is now recognized as proper practice.
(*Grimes* v. *Grimes,* 143 Ill. 550; *Emerson* v. *Western Un-
ion Railroad Co.* 75 id. 176.) A motion to dismiss for
want of equity, like a general demurrer, admits all of the
facts well pleaded in the bill. (*Brill* v. *Stiles,* 35 Ill. 305;
*Grimes* v. *Grimes, supra.*) The office of an answer or a
plea is to either deny the previous pleading or confess the
facts stated and set up matter in avoidance thereof. It is
inconsistent for a party to plead and demur to the same
pleading at the same time. The filing of a plea to the
merits or an answer is ordinarily a waiver of the right to
demur or move to dismiss for want of equity so long as
such plea or answer remains on file undisposed of. A party
cannot have the advantage of two inconsistent positions at
the same time. When Loesch made his motion to dismiss
for want of equity and induced the court, without objec-
tion from the other party, to treat such motion as a gen-
eral demurrer, it must be held as an abandonment of his
pleas. Regarding his motion to dismiss as a general de-
murrer and his pleas as being abandoned thereby by inter-
posing such motion, there was no error in sustaining the
motion to dismiss for want of equity. What has already

been said in the *Lavin case* disposes of the merits of this case.

The judgments of the Branch Appellate Court in both cases will be affirmed.

*Judgments affirmed.*

DUNN, CARTWRIGHT and COOKE, JJ., dissenting:

We concur in the affirmance of the judgment of the Appellate Court and in the position that the action of the criminal court of Cook county in appointing Frank J. Loesch to prosecute the particular causes cannot be questioned in this proceeding, but we do not assent to the proposition that by such appointment he became an officer, *de facto* or otherwise. An office is defined in the constitution as being "a public position created by the constitution or law, continuing during the pleasure of the appointing power, or for a fixed time, with a successor elected or appointed." (Const. art. 5, sec. 24.) The appointment by the court of an attorney to prosecute, instead of the State's attorney, in certain cases authorized by the statute, does not constitute such attorney an officer but confers merely a temporary authority for a special occasion, which falls within the constitutional definition of an employment as "an agency, for a temporary purpose, which ceases when that purpose is accomplished." (Const. art. 5, sec. 24; *Bunn* v. *People,* 45 Ill. 397; *People* v. *Loeffler,* 175 id. 585.) This case involves no question of title to an office but only the power of the commissioners to pay an employee. A court of equity has jurisdiction, upon the application of a tax-payer, to determine that question and to prevent an appropriation of public funds to a purpose not authorized by law. No salary or fixed compensation is attached to the employment of an attorney appointed to prosecute a particular cause instead of the State's attorney, but we know of no reason why the commissioners have not the power to pay for his services.