# CASES

ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF ILLINOIS.

---

(No. 12762.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WILLIAM E. NEWSOME, Plaintiff in Error.

*Opinion filed December 17, 1919—Rehearing denied Feb. 4, 1920.*

1. CRIMINAL LAW—*when indictment sufficiently alleges existence of election district.* In an indictment charging a judge of election with fraud under section 86 of the Election law, the statement that a general election was held in the second election district of the second precinct of the town of North Litchfield is a sufficient allegation that there was such an election district.

2. SAME—*allegation as to qualification of candidates is immaterial in indictment against election judge.* In an indictment under section 86 of the Election law, charging an election judge with fraudulently marking a ballot cast for a candidate for the office of State's attorney so that the ballot would not be counted or would count against him, it is not necessary to allege that said candidate had the qualifications required for the office, as the qualification of the candidate, so far as the offense is concerned, is immaterial.

3. SAME—*when judge of election is guilty of fraud under section 86 of Election law.* A judge of election who changes or attempts to change the ballot of an elector with intent to deprive such elector of voting for such person as he intended is guilty of fraud,

corruption, partiality or manifest misbehavior in his office, for which he may be prosecuted under section 86 of the Election law, even though his act may also be a crime under other sections of the Election law or under the Criminal Code.

4. SAME—*order appointing special State's attorney can be attacked only in direct proceeding.* Upon the filing of a petition by the State's attorney asking for the appointment of a special State's attorney the court has jurisdiction to determine whether such appointment shall be made, and as the attorney so appointed is at least a *de facto* officer, the order appointing him cannot be attacked except by a direct proceeding.

5. SAME—*ballots are admissible in evidence in prosecution of judge of election.* In a prosecution of an election judge for fraudulently marking ballots while the canvass was being made, the ballots are admissible in evidence although it has been more than six months since they were voted, after which time the Election law requires that they be destroyed, and though they may not have been preserved in the manner required by the Election law.

6. SAME—*what remark by accused before commission of alleged offense is admissible.* In a prosecution of an election judge who is charged with fraudulently marking ballots during the canvass of an election, a witness may be allowed to testify that some weeks before the election he heard the defendant remark how easy it would be to take a short lead pencil between his fingers and as he was going over the ballots mark them for any candidate he wished.

7. SAME—*when defendant cannot show that election was illegal.* An election judge properly appointed as such and who takes the oath and acts as such official is a *de facto* officer, and on his trial for fraudulently marking ballots during the canvass he cannot show as a defense that there was no order of the county board fixing the voting place and no record of the establishment of the election district.

8. SAME—*when objection that officer in charge of jury was not sworn comes too late.* Where the record shows that the officer in charge of the jury was sworn, an objection that he was not, in fact, sworn comes too late on motion for new trial, even though defendant's counsel claim they did not know of that fact until after the trial, as it is the duty of the defendant and his counsel to take notice of all the steps during the trial and to object to irregularities and preserve exceptions if they are not corrected.

9. SAME—*when proof that ballots were legally cast is not essential.* To authorize the conviction of a judge of election for fraudulently marking ballots during the canvass, proof that the ballots were legally cast is not essential.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on writ of error to the Circuit Court of Montgomery county; the Hon. WILLIAM B. WRIGHT, Judge, presiding.

GEORGE P. O'BRIEN, and J. H. ATTERBURY, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, AMOS· MILLER, Special State's Attorney, and ALBERT D. RODENBERG, for the People.

Mr. JUSTICE CARTER delivered the opinion of the court:

Plaintiff in error was convicted upon an indictment charging violation of section 86 of the general Election law of 1872. (Hurd's Stat. 1917, p. 1261.) He was sentenced on the verdict to confinement in the county jail for 260 days and to pay the costs. That section provides, among other things: "If any judge of any election * * * be guilty of any fraud, corruption, partiality or manifest misbehavior, * * * he shall, on conviction thereof," be fined or imprisoned in the county jail. The judgment of conviction was affirmed by the Appellate Court for the Third District. This writ of error has been sued out to reverse the judgment of the Appellate Court.

From the evidence it appears that plaintiff in error was judge of election at the general election held for State and county officers in the second district of the election precinct of North Litchfield, in Montgomery county, on November 7, 1916, at which the names of Frank M. Ramey and J. Earl Major appeared on the official ballot as opposing candidates for State's attorney. The indictment consisted of fourteen counts, in some of which the fraud, corruption, partiality and manifest misbehavior were alleged to be that plaintiff in error during the canvass of the votes changed and altered certain official ballots cast for Major

for State's attorney by making a cross or mark in the square in front of Ramey's name with the intent to defraud the electors of their votes. Some of the counts alleged an attempt to make such changes. In other counts the intent was alleged to be to deprive Major of the votes, and in others to mutilate and destroy the official ballots so that they would be thrown out and not counted for Major. A motion was made to quash each count of the indictment. This motion was overruled as to all counts except the thirteenth, to which it was sustained.

It is urged that the indictment does not allege that Major had the qualifications required for the office of State's attorney and that the indictment is not valid in this regard. The qualification of the candidates is immaterial.

It is also urged that the indictment was faulty in that it fails to aver that there was a second election district of the election precinct of the town of North Litchfield. The allegation of the indictment that a general election was held in the second election district of said town charges with sufficient certainty that there was such second election district.

It is further argued that the indictment does not charge that the plaintiff in error was guilty of any act that constituted fraud, corruption, partiality or manifest misbehavior, because the act of changing the ballots was of itself an offense under section 86 of the Election law, and the attempt to change the ballots was an offense under section 1 of division 2 of the Criminal Code. Plaintiff in error was indicted for fraud, corruption, partiality and misbehavior while acting as judge of the election. The indictment sets out the specific acts constituting such fraud, corruption, partiality and misbehavior, and it can make no difference that some of such acts so set out may, in and of themselves, have constituted the violation of other statutes or other sections of the Election act.

The indictment here in question is signed by Amos Miller, special State's attorney. The record shows that J. Earl

Major was the State's attorney of Montgomery county at the time the indictment was returned and that Miller was appointed special State's attorney by the court upon the petition of the State's attorney. Section 6 of chapter 14 of our statutes provides that whenever the State's attorney is interested in a cause which it is his duty to prosecute or defend, the court in which such cause is pending may appoint some competent attorney to prosecute or defend, and the attorney so appointed shall have the same power and authority in relation to such cause as the State's attorney would have. Without question the circuit court was authorized, on the filing of the petition by the State's attorney, to appoint Miller as special State's attorney, and the order appointing him could only be attacked by direct proceeding. He was at least a *de facto* special State's attorney. *Lavin* v. *Commissioners of Cook County,* 245 Ill. 496.

The election was conducted in a store-room at the southeast corner of State and Ryder streets, fronting west twenty-two feet on State street and running back sixty-six feet, called by some of the witnesses the Morrison building, by others the Taylor Annex. The only entrance to the building was a door at the west end. It was separated into two rooms by an arch. There were nine or ten booths used at the election,—five along the north wall in the west end of the building and four extending across the west room north and south, back of the space where the judges and clerks conducted the election, dividing the west room into two parts. While the polls were open only the front part of the front room was used. After the polls were closed at five o'clock the boxes were carried to the east room beyond the booths and arch and opened and the ballots were placed on a table about fourteen feet long. Between six and seven o'clock the judges and clerks, leaving the ballots on the table in the east room, had supper in the front room. While they were doing so they were not in sight of the ballots on the table in the back room, and five or six per-

sons who were not election officers were in the back room where the ballots were on the table? After supper the canvass of the votes was continued in the back room. Besides the judges and clerks there were present at such count and canvass Dan W. Maddox and L. L. Deem, republican challengers, Stuttle and Bray, democratic challengers, and others. Deem testified that they went through the ballots for each office; that he separated the ballots and passed the democratic ballots to the plaintiff in error and the other ballots to another judge named Johnson; that he saw plaintiff in error with a short pencil mark a number of the ballots a short distance from the bottom of the sheets, his hand being partially under the ballots. Witness told Maddox about what he had seen and soon after the attention of all present was called to the ballots, which were marked for two candidates for State's attorney. The matter was discussed and charges made that the ballots had been tampered with. The question arose as to how they should be counted, and they were finally all counted for Major. Twenty-one ballots were introduced in evidence. The names of the candidates for State's attorney are printed about two inches from the bottom, the democratic column (in which Major's name appears) being the first on the ballot and the republican column (in which Ramey's name appears) being the third. The pencils in the booths furnished by the election officers were indelible. Many of the ballots show marks in the circle or in the squares, including the square before Major's name, all made with an indelible pencil, and a mark in the square before Ramey's name made with a soft black pencil. There is evidence in the record tending to show that plaintiff in error had talked with Maddox after the election about the case not being prosecuted. There is also evidence that during the canvass in the polling place plaintiff in error was charged with changing these ballots and did not in any way attempt to explain or deny the charge. Maddox testified that after the charge was made that the ballots had

been marked improperly he saw plaintiff in error put in his vest pocket what he thought was a short pencil about two inches long.

It is urged that the ballots alleged to have been altered by plaintiff in error were improperly admitted in evidence for the reason that more than six months had elapsed since the election at which they were voted, and that the law required the county clerk to destroy them, no election contest pending, and therefore they had no legal existence. They were actually in existence. Their value as evidence is not affected by the lapse of time or the failure of the county clerk to destroy them.

It is also urged that the ballots were not properly preserved and that none of them were identified by witnesses. Whatever may be the rule as to the competency of ballots in cases of election contests, such rule does not apply to the competency of ballots in a criminal prosecution of this character. They were admissible in evidence, together with evidence of the manner in which they had been preserved, for what they were worth, and it was for the jury to determine what weight should be given to them as evidence under all the circumstances of the case.

Counsel for plaintiff in error produced the record of the proceedings of the board of supervisors and offered to show that there was no order of the supervisors fixing the Morrison building or Taylor Annex as the voting place, and that there was no record of the establishment of election district No. 2 or that the township of North Litchfield had ever been divided into election districts. It is argued by counsel for plaintiff in error that it is essential to the validity of an election that it be held at the time and place appointed by law; that when the place is not fixed by law but is to be fixed by some authority named in the statute, it is essential to the validity of the election that the place be fixed by such agency. (*Snowball* v. *People,* 147 Ill. 260; *Williams* v. *Potter,* 114 id. 628; *People* v. *Goche-*

291 — 2

*nour,* 54 id. 123.) All of these cases were with reference to the validity of the election and not as to the liability of an election official to be punished for a violation of the Election law at the election so held. In the case at bar the second district of the township in question had apparently been recognized as one of the voting districts for some time. The county commissioners, in appointing the judges and clerks, appointed such officials for the second district, including plaintiff in error. He was served with notice of his appointment and took his oath as such official. The ballots were printed by the county clerk especially for this district, having on the back the designation of the district according to law. No objection was made by plaintiff in error when he took the oath of office and assumed the duties as one of the judges that the election was not held at the legally appointed place, or that it was not in a properly established district, or that it was not properly called, or that there was any other thing in connection with it that was being carried on contrary to law. In *People* v. *McCann,* 247 Ill. 130, the court, in discussing a somewhat similar question, stated (p. 143) : "But, as between himself and third parties, (the State in this case,) if the office * * * had a legal existence and plaintiff in error assumed the duties and discharged the powers and functions of the office he became a *de facto* officer, and cannot be permitted to deny his responsibility, while so acting, on the ground that he was not legally elected or appointed to said office." That case is reported in 20 Am. Ann. Cas. 496, with a somewhat lengthy note at the close, in which the rule laid down in the opinion that a *de facto* officer is criminally liable for his acts of malfeasance is supported by many decisions from other jurisdictions. In *State* v. *Carroll,* 38 Conn. 449, the court stated : "An officer *de facto* is one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid so far as they involve the interest of the public and third persons, where the duties

of the office were exercised." This court said in *People
v. Lieb,* 85 Ill. 484, on page 489: "To constitute an officer
*de facto* it is not necessary that he should derive his ap-
pointment from one competent to invest him with a good
title to the office,"—citing authorities. This doctrine in both
of these cases was cited with approval by this court in *La-
vin v. Commissioners of Cook County, supra.* Under these
authorities, beyond question, the plaintiff in error was a
*de facto* officer and was liable, under the law, for his acts
as such. The office of judge of election had a legal exist-
ence. The election was the general one provided by law.
The voters of that locality went to the polls and cast their
ballots, which had been duly prepared by the county clerk
for that district. Plaintiff in error acted through the day
and at the canvass of the ballots as one of the election offi-
cials, and he cannot be heard to deny that he is responsible
for any delinquency on his part while acting in that capac-
ity, simply because of an oversight by the county board,
if one was made, in not making a proper record of the
establishment of that election district.

It is also urged by counsel for plaintiff in error that cer-
tain testimony was admitted, over objection, that two or
three weeks before the election the witness heard plaintiff
in error, in talking about the election in the presence of
several other persons, explain how easy it would be to take
a short lead pencil between his fingers and as he was going
over the ballots mark for any candidate he wished. It is
not claimed that plaintiff in error said at that time that he
was intending to do anything of the kind, but it is argued
that the evidence was competent as an admission against
interest. The test of the admissibility of evidence is the
connection of the facts proved with the crime charged, and
whatever testimony tends directly to show the defendant
guilty of the crime charged is competent. (*People v. Moel-
ler,* 260 Ill. 375.) Any evidence which has a natural tend-
ency to establish the fact in controversy should be admitted.

(*Commonwealth* v. *Merriam*, 14 Pick. 518; *People* v. *Jennings*, 252 Ill. 534.) Any circumstance may be put in evidence which may tend to make the proposition at issue either more or less probable. (1 Wharton on Crim. Evidence,—3d ed.—sec. 21; Jones on Evidence, sec. 136.) Where the defendant was charged with the murder of his father, obscure allusions made by him to some coming event were admitted. "The fact that the language might possibly have an innocent meaning did not prevent its consideration by the jury, who would, of course, be called upon to decide whether such was the fact or whether it was a dark hint thrown from a mind that already felt the shadow of the coming tragedy." (*State* v. *Hoyt*, 47 Conn. 518.) Where the defendant was accused of having committed a crime for hire, his statement that he was to receive some money was admitted. (*State* v. *Green*, 92 N. C. 779.) In another case it was shown that several months before the crime the accused had consulted with a hack driver about letting his team run away with a certain individual over a bluff into a lake and had asked him how much he would take for the horses and hack. This was held admissible to show that the accused contemplated murder. (*State* v. *Hayward*, 62 Minn. 474.) Where one was charged with strangling a woman, evidence that after the crime accused showed how he could kill by strangling was held admissible. (*Moore* v. *State*, 2 Ohio St. 500.) In this last case the court stated that the evidence was admissible as showing the state of the mind of the party and as part of his conduct from which an inference as to the working of his mind might be drawn. We think, under the reasoning of these cases, this evidence was properly admitted.

It is also urged that the court permitted the jury to retire in charge of an unsworn officer. This question was first sought to be presented on motion for new trial by the affidavits of the plaintiff in error and his counsel, the latter making their affidavits on information and belief. The rec-

ord of the circuit court shows that the officer was sworn. Moreover, no objection was made by plaintiff in error or his counsel until after the trial. It has been held by this court that if an officer is not, in fact, sworn, the defendants should object to the irregularity at the time, and if not then corrected should preserve their objection by a bill of exceptions. (*Dreyer* v. *People,* 188 Ill. 40; see, also, *Lamb* v. *People,* 219 id. 399.) Counsel for plaintiff in error say they could not waive the objection because they did not know until after the trial that the officer was not sworn. It is the duty of plaintiff in error and counsel to take notice of all the steps taken in the progress of the trial, and they have no right to stand by and permit irregular proceedings to take place and then argue such irregularities to be error. Counsel could have ascertained whether or not the officer was sworn, before the jury retired in the officer's charge, if proper steps had been taken to ascertain such information.

It is further urged by counsel for plaintiff in error that prejudicial error was committed by the special State's attorney in his closing argument to the jury when he said, among other things, "They dared not put Robert Newsome on because he would not swear to that." The record shows that when Maddox, a witness for the State, was being cross-examined by counsel for plaintiff in error, they asked him in regard to a conversation with Robert Newsome, brother of plaintiff in error: "In that conversation did you tell Robert Newsome that if Billie Newsome would get out of politics, resign as central committeeman, resign as overseer of the poor and move away, that you would stop the thing, and you thought you could?" and he answered: "I never made any such statement to Bob Newsome or anyone else; I can explain what I did say." This examination of Maddox was not in any way competent unless it was intended to impeach his credibility as a witness. Robert Newsome was not called as a witness, and so the special State's attorney deemed it proper, in discussing Maddox's testimony,

to refer to this question put to Maddox. We do not think the remark of the special State's attorney, under these circumstances, constituted error.

Counsel for plaintiff in error asked the People's witness Bray, one of the challengers, who testified as to what occurred in the polling place at the canvass, whether he was drunk or sober at that time, and the court sustained an objection to the question. The court should have allowed a very wide latitude on the cross-examination of this witness and should have permitted this question to be answered so as to test how accurate his recollection was or how reliable his testimony. However, in view of the testimony of other witnesses as to what took place during the canvass, we are of the opinion that the error in this ruling cannot be considered prejudicial to plaintiff in error.

It is further objected that the instructions should have required proof that the ballots changed were legally cast. In canvassing the ballots the judges have no duty to perform with reference to the casting of the ballots. It is their duty to canvass the ballots in the ballot-box, and this duty is not affected by the illegality of the ballots, except so far as such illegality is shown by the ballots themselves.

Numerous objections were also made as to the giving and refusal of instructions. We have examined all the questions raised with reference to the instructions and have reached the conclusion that, taken as a series, the jury were not misled in any particular by the alleged errors, and it would serve no useful purpose to discuss in detail the numerous objections raised.

The evidence amply justified the verdict of the jury, and we find no reversible error in the record.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*